In re Interest of Kalie W., a child under 18 years of age.
State of Nebraska, appellee, v. Kevin R., appellant,
and Angela W., appellee.
601 N.W.2d 753

Filed October 29, 1999.    No. S-99-001.

Patrick L. Neid for appellant.

Shurie R. Graeve, Deputy Hall County Attorney, and Brandi Bosselman, of Bosselman Law Office, guardian ad litem.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

HENDRY, C.J.

## INTRODUCTION

Kevin R., father of Kalie W., appeals the order of the Hall County Court, sitting as a juvenile court, terminating his parental rights. We removed this case to our docket pursuant to our power to regulate the Nebraska Court of Appeals' caseload and that of this court. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995). We affirm the termination of Kevin's parental rights.

## BACKGROUND

Kalie, born December 2, 1996, is the daughter of Angela W. and Kevin. On December 4, 1996, a juvenile petition was filed, alleging that Kalie was a child in a situation dangerous to life or limb or injurious to her health and morals under Neb. Rev. Stat. § 43-247(3) (Reissue 1993). This allegation resulted from an incident in which Angela's other child, Devin W., was taken to

the hospital emergency room with suspicious burns resulting from scalding. Kalie was placed in the temporary custody of the Department of Social Services, now the Department of Health and Human Services (DHHS).

On January 9, 1997, approximately 1 month after Kalie was taken into temporary custody, Kevin was arrested for assaulting Angela. Kevin's assault on Angela occurred over a 2-day period, during which time Kevin would not allow Angela to leave the home. Angela's injuries, which included two very swollen black eyes, very swollen lips, bleeding in her facial area, and bruising on her back, right ankle, left leg, and upper right thigh, required emergency room care. Susan Haecker, director of the Family Violence Coalition, spoke with Angela and observed her injuries the night Angela was transported to the emergency room. Haecker testified that Angela's face and lips were so swollen that she was hardly recognizable and that this was the worst domestic violence incident she had seen that had not resulted in a homicide. Kevin was convicted of assault in the first degree, a Class III felony, and sentenced to 5 to 8 years' imprisonment in the state penitentiary. Kevin has been incarcerated since his January 9 arrest.

On February 5, 1997, Kalie was adjudicated as a child in a situation dangerous to life or limb or injurious to her health and morals under § 43-247(3) (Cum. Supp. 1996). Various case plans were then submitted by DHHS, setting goals for both Angela and Kevin to meet in order to have Kalie returned. On May 13, 1998, the State filed a motion to terminate the parental rights of both parents. The State alleged three grounds for termination pursuant to Neb. Rev. Stat. § 43-292 (Reissue 1998): (1) The parents have substantially and continuously or repeatedly neglected and refused to give Kalie necessary parental care and protection; (2) following a determination that Kalie is a juvenile as described in subsection (3)(a) of § 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination; and (3) Kalie has been in out-of-home placement for 15 or more months of the most recent 22 months.

On November 12, 1998, the Hall County Court terminated both Angela's and Kevin's parental rights. In its order of

termination, the court stated that the record reflected "substantial and continuous or repeated neglect justifying termination of parental rights." The court made specific findings regarding Kevin's incarceration; his history of criminal, violent, and assaultive behavior; and his vicious assault on Angela shortly after Kalie's birth. Based on this evidence, the court found that termination of Kevin's parental rights was in Kalie's best interests. It is from this order which Kevin appeals. Angela does not appeal.

## ASSIGNMENTS OF ERROR

Kevin claims the juvenile court erred in (1) finding that he substantially and continuously or repeatedly neglected and refused to give Kalie necessary parental care and protection, (2) determining that reasonable efforts to preserve and reunify the family have failed to correct the conditions leading to the determination that Kalie is a juvenile as described in § 43-247(3)(a), and (3) finding that Kalie has been in out-of-home placement for 15 or more months of the most recent 22 months.

## STANDARD OF REVIEW

In an appeal from an order terminating parental rights, an appellate court tries factual questions de novo on the record. Appellate review is independent of the juvenile court's findings. However, when the evidence is in conflict, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999).

## ANALYSIS

In order to terminate parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). Thus, only one ground for termination need be proved in order for Kevin's rights to be terminated.

In his first assignment of error, Kevin claims that the State failed to prove that he substantially and continuously or repeatedly neglected and refused to give the child necessary

parental care and protection. In support of this contention, Kevin correctly asserts that the fact he is incarcerated, standing alone, does not provide grounds for termination of parental rights. See, *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992); *In re Interest of B.A.G.*, 235 Neb. 730, 457 N.W.2d 292 (1990). However, a parent's incarceration may be considered along with other factors in determining whether parental rights can be terminated based on neglect. *In re Interest of L.V., supra*; *In re Interest of B.A.G., supra.* Most recently in *In re Interest of Joshua M. et al.*, we stated, "While incarceration alone is not a basis for termination of parental rights . . . we note that [the mother's] incarceration has contributed to the neglect of her children." 256 Neb. at 613, 591 N.W.2d at 568, citing *In re Interest of L.V., supra.* Thus, it is appropriate to consider Kevin's incarceration as a factor in regard to whether he neglected Kalie.

▮ Kevin's incarceration makes it nearly impossible for him to provide for any of Kalie's needs. Kevin argues that he was not given the opportunity to meet Kalie's needs because he was denied visitation while imprisoned. However, in *In re Interest of J.N.V.*, 224 Neb. 108, 111-12, 395 N.W.2d 758, 761 (1986), we stated:

> One need not have physical possession of a child to demonstrate the existence of the neglect contemplated by § 43-292(2). . . .
>
> . . . .
>
> A parent may as surely neglect a child of whom [he or] she does not have possession by failing to put [himself or] herself in a position to acquire possession as by not properly caring for a child of whom [he or] she does have possession.

See, also, *In re Interest of L.C., J.C., and E.C.*, 235 Neb. 703, 457 N.W.2d 274 (1990). At the time Kevin became incarcerated, he knew Kalie had been placed in the custody of DHHS. In spite of this knowledge, he severely beat Angela and was incarcerated as a result. We have often noted that although incarceration itself may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary. See, *In re Interest of L.V., supra*; *In re Interest of B.A.G., supra*; *In re Interest of R.T. and R.T.*, 233 Neb. 483, 446 N.W.2d 12 (1989).

The conduct resulting in Kevin's incarceration was voluntary on his part. Kevin chose to severely assault Angela, which seriously impaired any possibility of having Kalie placed in his care. He cannot now complain that he did not have the opportunity to meet Kalie's needs when it was his own conduct that placed him in a position where he could not care for Kalie.

■ Furthermore, the nature of Kevin's crime and the fact that the crime was committed against Angela, Kalie's mother, should also be considered. We have recognized that in termination of parental rights cases, it is proper to consider " ' "a parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated . . . ." ' " *In re Interest of L.V.*, 240 Neb. at 420, 482 N.W.2d at 260-61, quoting *In re Pawling*, 101 Wash. 2d 392, 679 P.2d 916 (1984). See, also, *In re Interest of Reed*, 212 Neb. 208, 322 N.W.2d 411 (1982) (considering fact that father was incarcerated for shooting with intent to kill); *In re Interest of R.T. and R.T., supra* (considering fact that mother was incarcerated on several occasions due to compulsive shoplifting).

Kevin became incarcerated because he severely assaulted Angela. The assault on Angela was especially prolonged and violent and resulted in serious injuries. Perpetrating a severe assault on Angela, Kalie's mother, is obviously not in Kalie's best interests. Furthermore, Kevin had assaulted Angela on several previous occasions and testified at the termination hearing that he had assaulted previous girl friends as well.

The record establishes that Kevin has a history of criminal, violent, and assaultive behavior. In addition to the conviction for first degree assault on Angela, Kevin's criminal history includes convictions for third degree assault against another female victim, arson, escape, and tampering with a witness.

■ The grounds for terminating parental rights must be established by clear and convincing evidence, which is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proved. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). The evidence in this case clearly and convincingly establishes that Kevin neglected his child. He placed himself in a position where

he could not care for Kalie. He committed a serious crime at a time when he knew that Kalie had already been placed in the custody of DHHS. The crime leading to Kevin's incarceration was especially violent and, moreover, was perpetrated upon Angela, Kalie's mother.

Based upon our de novo review of the record, we conclude that the evidence clearly and convincingly establishes that Kevin substantially and continuously or repeatedly neglected and refused to give Kalie necessary parental care and protection and that Kalie's best interests require the termination of Kevin's parental rights. Because we conclude that the evidence is sufficient to terminate Kevin's parental rights on the ground of neglect, we need not reach his other assignments of error. See *In re Interest of Constance G., supra.*

## CONCLUSION
The judgment of the Hall County Court is affirmed.

AFFIRMED.

MCCORMACK, J., participating on briefs.