IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**


IN RE INTEREST OF EMILEE J.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF EMILEE J., A CHILD UNDER 18 YEARS OF AGE.


STATE OF NEBRASKA, APPELLEE,
V.
MICHAEL D., APPELLANT.


Filed September 10, 2013.    No. A-13-059.


Appeal from the Separate Juvenile Court of Lancaster County: LINDA S. PORTER, Judge. Affirmed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Carolyn Bosn, Deputy Lancaster County Attorney, for appellee.


INBODY, Chief Judge, and IRWIN and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Michael D. appeals from the order of the juvenile court which terminated his parental rights to his daughter, Emilee J. On appeal, Michael challenges the juvenile court's finding that his parental rights should be terminated pursuant to Neb. Rev. Stat. § 43-292(2) and (4) (Cum. Supp. 2012) and the court's finding that termination of his parental rights is in Emilee's best interests. Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Michael's parental rights. As such, we affirm the order of the juvenile court terminating Michael's parental rights to Emilee.

## II. BACKGROUND

These juvenile court proceedings involve Emilee, born in March 2007. Michael is Emilee's biological father. Josey J. is Emilee's biological mother. Josey's parental rights to

- 1 -

Emilee have been terminated; however, she is not a party to this appeal, and her involvement in the juvenile court proceedings will be discussed only to the extent necessary to provide contextual background.

From the time of Emilee's birth in March 2007 through June 2011, Emilee resided with Josey. During this time, Michael had "regular visitation" with Emilee and saw her approximately once a week. Also during this time period, Michael struggled with a substance abuse problem and with criminal charges and convictions which occurred as a result of his substance abuse problem. Michael's struggles hindered his ability to see or care for Emilee.

In July 2009, Michael was charged with possession of a controlled substance with intent to deliver (a Class III felony) and with possession of more than 1 pound of marijuana (a Class IV felony). Michael was convicted of both charges. He was sentenced to a period of 360 days in jail for possessing more than 1 pound of marijuana. He began serving this sentence in May 2010. He was initially approved for the work release program, but quickly lost this status after he failed a drug test after returning from work one day. Michael was sentenced to 2 years of intensive supervision probation for his conviction for intent to deliver a controlled substance. He began serving this sentence after his release from jail in January 2011. Michael was still on probation when these juvenile court proceedings were initiated.

The events which resulted in these juvenile court proceedings occurred during the summer of 2011. In approximately June 2011, Josey brought Emilee to Michael's residence for a visit and did not immediately return. Emilee stayed with Michael for a few weeks before Josey returned to take Emilee. At that time, Josey apparently took Emilee to reside with a family member.

In August 2011, the State filed a petition alleging that Emilee was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008) due to the faults or habits of Josey. Specifically, the petition alleged that Josey had failed to provide Emilee with safe and stable housing and admitted to using marijuana and that these actions placed Emilee at risk for harm. Ultimately, Josey admitted to these allegations and Emilee was adjudicated as a child within the meaning of § 43-247(3)(a).

At the time the petition was filed, Emilee resided with her maternal grandmother. She has continuously remained in that placement throughout the pendency of the juvenile court proceedings.

As Emilee's father, Michael was served with notice of the petition and was ordered to appear in the juvenile court for a hearing. Michael requested that counsel be appointed to him, and the juvenile court granted this request. Michael also requested visitation with Emilee. Beginning in October 2011, Michael began having supervised visitation with Emilee twice per week. Initially, these visits occurred in Michael's home; however, in November 2011, the visits were moved to a visitation center after Emilee brought home toys after a visit with Michael and insects crawled out of the toys and after Michael's probation officer reported that he had tested positive for a controlled substance during a recent urinalysis test. After the visits were moved to the visitation center, Michael never attended another visit with Emilee. As such, Michael's last visit with Emilee was during the last part of October 2011.

A hearing was held in juvenile court on January 26, 2012. At this hearing, the court learned that Michael had not ever completed paternity testing to formally establish that he was

Emilee's biological father. As a result of this discovery, the court discharged Michael's court-appointed counsel because "we don't appoint counsel for alleged father[s] until paternity is established." The court ordered that genetic testing be made available to Michael so that he could establish paternity. The court also indicated that Michael was not to have any visitation with Emilee until such time as paternity had been established. However, it is clear that by the time of this hearing, Michael was no longer participating in visitation.

In March 2012, Michael was incarcerated after failing to comply with multiple provisions of his probation. His probation was revoked, and he was resentenced to 3 to 5 years' imprisonment for his conviction for intent to distribute a controlled substance. After Michael was incarcerated, he submitted to a paternity test. That test revealed that he is Emilee's biological father. As such, the juvenile court reappointed Michael with counsel. Michael indicated to the juvenile court that he wished to be involved in the juvenile court proceedings and wished to be involved in Emilee's life.

On August 2, 2012, the State filed a supplemental petition and motion for termination of parental rights as to Michael. In the supplemental petition, the State alleged that Emilee was a child within the meaning of § 43-247(3)(a) due to the faults or habits of Michael. Specifically, the petition alleged that Michael had failed to put himself in a position to provide for Emilee's basic needs or to provide an environment in which he could assume the care and custody of Emilee because of his incarceration.

The motion for termination of Michael's parental rights alleged that termination was appropriate pursuant to § 43-292(2) because Michael had substantially and continuously or repeatedly neglected and refused to give Emilee necessary parental care and protection and § 43-292(4) because Michael is unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, and/or repeated lewd and lascivious behavior, and such conduct is seriously detrimental to the health, morals, or well-being of Emilee. In addition, the motion alleged that termination of Michael's parental rights was in Emilee's best interests. At the time the State filed its supplemental petition and the motion to terminate parental rights, Michael remained incarcerated.

On October 18, 2012, a hearing on the State's petition and motion to terminate Michael's parental rights began. The hearing continued on December 4. While we have reviewed the evidence presented at the hearing in its entirety, we do not set forth the specifics of the testimony and exhibits here. Rather, we will set forth specific facts as presented at the hearing as necessary in our analysis below. We do note that at the time the termination hearing concluded in December 2012, Michael remained incarcerated.

At the conclusion of the termination hearing, the juvenile court entered a detailed order adjudicating Emilee as a child within the meaning of § 43-247(3)(a) and terminating Michael's parental rights to Emilee. The court found that the State had proven that termination of Michael's parental rights was warranted pursuant to § 43-292(2) and (4) and that termination was in Emilee's best interests.

Michael appeals from the juvenile court's order.

## III. ASSIGNMENTS OF ERROR

On appeal, Michael challenges the juvenile court's finding that his parental rights should be terminated pursuant to § 43-292(2) and (4) and that termination of his parental rights is in Emilee's best interests.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that termination is in the child's best interests. See *In re Interest of Jagger L., supra*. The State must prove these facts by clear and convincing evidence. *Id.* Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of the fact to be proven. *Id.*

### 2. STATUTORY GROUNDS FOR TERMINATION

Michael assigns as error the juvenile court's finding that the State presented clear and convincing evidence to prove the statutory grounds for termination of his parental rights. Specifically, he challenges the juvenile court's determination that termination of his parental rights was warranted pursuant to § 43-292(2) and (4). Upon our de novo review of the record, we find that the State presented clear and convincing evidence to prove that termination was warranted pursuant to § 43-292(2). As such, we need not specifically address the juvenile court's determination as to § 43-292(4).

Section 43-292(2) provides that a court may terminate parental rights when "[t]he parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection." The evidence presented at the termination hearing revealed that Michael has failed to provide Emilee with any parental care or protection for some time.

At the time of the termination hearing, Michael was incarcerated and, as a result, was simply unable to provide Emilee with such basic necessities as housing and food. Michael has also not been able to tend to Emilee's daily needs or provide any emotional support. It is not entirely clear from the record when Michael will be released from prison or whether he will even be in a position to have contact with Emilee immediately after his release. The Nebraska Supreme Court has recognized that in termination of parental rights cases, it is proper to consider a parent's inability to perform his or her parental obligations because of imprisonment. *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999). A parent's incarceration may be considered along with other factors in determining whether parental rights can be terminated based on neglect. *Id.*

Michael's current incarceration is due to his failure to abide by the terms of his probation. The evidence presented at the hearing demonstrates that many of Michael's violations of his probation, including testing positive for the use of methamphetamines, failing to report for required drug testing, and failing to keep in contact with his probation officer, occurred after the beginning of these juvenile court proceedings. This evidence indicates that Michael engaged in inappropriate and illegal behavior even after he knew that Emilee had been removed from Josey's care and was in the custody of the State. And, Michael's current incarceration does not appear to be an isolated occurrence, but, rather, is part of a history of law violations which stem from his drug use. The evidence presented at the termination hearing reveals that Michael struggles to remain sober and to stay out of trouble when he is in the community. Michael's actions directly affect his ability to be a parent to Emilee.

Prior to Michael's most recent incarceration, he made no efforts to retain any sort of relationship with Emilee or to provide for her in any way. Michael was granted visitation time with Emilee beginning in October 2011. Michael visited with Emilee approximately five times and then he stopped attending altogether with little explanation for his decision. Michael has not seen Emilee since the end of October 2011.

Michael has never financially provided for Emilee. There was evidence that Michael's family has provided money for Emilee's care, but that he has never contributed any significant amount of money for her basic necessities or her medical care. In fact, Michael testified that he did not pay any child support for Emilee during these juvenile court proceedings because, "I didn't feel that was necessary." Prior to his incarceration, Michael did not have stable housing and did not have steady employment.

Michael's participation in the juvenile court proceedings was suspended in January 2012 after the court discovered that he had not undergone formal paternity testing. Such testing was made available to Michael, but he did not immediately submit to a test. In fact, Michael chose not to submit to paternity testing until after he was incarcerated. At this point in time, however, Michael's ability to participate in the juvenile court proceedings was hindered due to his unavailability.

In its January 2013 order, the juvenile court summarized the evidence presented at the termination hearing as follows:

> Despite [Michael's] knowledge of [Emilee's] out-of-home placement, as well as Emilee's mother's absence from her life, [Michael] has failed to put himself in a position to provide a stable home and parental care for her. He has on more than one occasion in the last two years engaged in conduct which has resulted in his removal from the community and her life. [Michael] was afforded the opportunity in January of 2011 to demonstrate that once out of the confines of incarceration he would make better choices and place his daughter's needs above his own. Within months, he was using alcohol and controlled substances again and neglecting his daughter's need for a sober and committed parent. [Michael] has a number of excuses for his choices over the last five years and has taken minimal responsibility to date for the difficult situation his daughter has been placed in through no fault of her own.

Upon our de novo review of the record, we conclude that the juvenile court's statements are an accurate summary of the evidence presented at the termination hearing. Given the evidence presented, it is clear that Michael has substantially and continuously or repeatedly neglected and refused to give Emilee necessary parental care and protection pursuant to § 43-292(2). Accordingly, we find that the juvenile court did not err in finding that termination of Michael's parental rights was warranted pursuant to § 43-292(2). Because we find that termination of Michael's parental rights was warranted pursuant to § 43-292(2), we decline to address whether termination of his rights was also warranted pursuant to § 43-292(4).

### 3. BEST INTERESTS OF CHILD

Michael also assigns as error the juvenile court's finding that termination of his parental rights is in Emilee's best interests. Specifically, he alleges that the evidence presented at the termination hearing revealed that he has demonstrated improvement in his circumstances and in his parenting skills and that he should be provided with more time to work toward reunification with Emilee. Michael also alleges that he and his family have a strong bond with Emilee. Upon our de novo review of the record, we find sufficient evidence to conclude that termination of Michael's parental rights was in Emilee's best interests. We affirm.

At the termination hearing, Michael testified that he had made improvements to his lifestyle and that he wished to be a part of Emilee's life. Michael indicated that he was completing a drug treatment program while incarcerated and that he had abstained from using any illegal drugs while in prison. Michael also indicated that he had completed a parenting class during his incarceration. Michael stated that he was striving "to be better" so that he could remain a part of Emilee's life. There was some evidence that Michael could be released from prison as early as March 2013, but this release date was contingent on Michael's successfully completing his drug treatment program and moving into a transitional living house. Emilee would be permitted to visit Michael at the transitional living house.

We first note that we applaud Michael's efforts to enroll in and complete a drug treatment program and a parenting class. However, when we consider Michael's efforts during his latest incarceration alongside his efforts during the duration of these juvenile court proceedings, we conclude that Michael has simply not made significant progress toward reunification with Emilee.

Michael's efforts to complete the drug treatment program while incarcerated are only the first steps in becoming a sober and stable parent. There was evidence presented that Michael has a "moderate" risk of relapsing and starting to use controlled substances again once released from the drug treatment program. In addition, there was evidence that Michael would have to seek additional substance abuse treatment after his release from prison. As we discussed above, Michael has a history of resuming his drug use after a period of incarceration. Remaining drug free outside of prison is arguably very different than remaining drug free while incarcerated. Due to Michael's history of drug use outside of prison, he would have to demonstrate his ability to sustain his sobriety for a period of time prior to achieving any kind of reunification with Emilee.

Moreover, Michael will not be employed upon his release from prison. He will not have safe and stable housing. Michael testified that he may be released from prison early to reside in transitional housing. This environment clearly would not be appropriate for a child. And, it is not

clear how long Michael would remain in the transitional housing or where he would go after leaving that residence.

Contrary to Michael's suggestions, he does not have a strong bond with Emilee. He has not even seen Emilee since October 2011 when he chose to stop attending visitations with her. Michael has not stayed in contact with Emilee, nor has Emilee received any cards or gifts from Michael. Emilee does not ever ask about Michael, and she has expressed a desire not to see him. In fact, when Emilee overheard a conversation about having to see Michael, she began to cry. While Michael expressed a strong desire to have a relationship with Emilee, he did not ever indicate that he desires to be a full-time parent to her. Instead, our reading of Michael's testimony suggests that Michael would like to have visitation with Emilee and see her whenever it is convenient for him. Emilee needs, and deserves, more permanency than this type of relationship will provide for her.

Emilee does have a relationship with Michael's family, and there was evidence that Emilee's foster parents would facilitate Emilee's relationship with her paternal grandparents and great-grandparents even if Michael's parental rights were terminated.

Taken as a whole, the evidence presented at the termination hearing revealed that despite Michael's desire to be reunited with Emilee, he is simply not ready or able to be an effective parent. When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights. *In re Interest of Walter W.*, 274 Neb. 859, 744 N.W.2d 55 (2008). Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id*.

By the time the termination hearing concluded in December 2012, Emilee had been in an out-of-home placement for more than 15 months. Emilee deserves a permanent and stable home environment, which Michael has demonstrated he is unable to provide. We conclude that termination of Michael's parental rights is in Emilee's best interests. We affirm the order of the juvenile court terminating Michael's parental rights to Emilee.

## V. CONCLUSION

Upon our de novo review of the record, we find that the State presented sufficient evidence to warrant termination of Michael's parental rights. As such, we affirm the order of the juvenile court terminating his parental rights to Emilee.

AFFIRMED.