IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF HAYDEN N.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF HAYDEN N., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
KEVIN N., APPELLANT.

Filed March 4, 2014.    No. A-13-746.

Appeal from the County Court for Dixon County: DOUGLAS L. LUEBE, Judge. Affirmed.

Dennis R. Hurley, of Hurley Law Offices, for appellant.

No appearance for appellee.

Patrick H. Tott, guardian ad litem.

IRWIN, MOORE, and BISHOP, Judges.

MOORE, Judge.

Keith N. appeals from an order of the county court for Dixon County, sitting as a juvenile court, which terminated his parental rights. He challenges the court's determination that termination of his parental rights was in Hayden's best interests. Finding no error in that decision, we affirm the district court's order.

FACTUAL BACKGROUND

Keith and Beverly B. are the biological parents of Hayden N., born in January 2008. Keith and Beverly were never married, but lived together for a short period of time after Hayden's birth. After they separated, Beverly was Hayden's primary caregiver and Keith had periods of parenting time that the parties established themselves. Conflicting evidence was presented at trial regarding how much parenting time Keith actually exercised. There was a court order requiring Keith to provide child support.

- 1 -

On May 18, 2011, while Hayden was under Beverly's care, law enforcement found him unattended at a park in Ponca, Nebraska. The Department of Health and Human Services (DHHS) determined that removal from Beverly's care was necessary and temporarily placed Hayden in a traditional foster home. On May 24, the State filed a petition in the county court for Dixon County, alleging that because of Beverly's actions, Hayden was a juvenile within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). The State amended its petition on June 13. In both the original and amended petitions, the State noted that Keith was Hayden's father and included Keith's addresses, but no further allegations were made as to Keith. On May 24, Hayden was placed with Beverly's grandmother, Dianna B. Prior to placement with Dianna, Keith indicated to DHHS initial assessment worker Gina Dutcher that he wanted to take placement of Hayden, but could not because he needed to "get his life together." Hayden has remained with Dianna since this placement.

After Hayden was removed from Beverly's home, DHHS established a visitation schedule for Keith. On May 27, 2011, Keith had his first and only visit with Hayden during the pendency of this case. After this visit, Keith submitted to a drug test which detected marijuana in his system. Keith admitted to having used marijuana around that time, but claimed that he was only a periodic user and had stopped using once he became aware of Hayden's case. He testified that the test detected the remnants of his prior usage.

Keith was arrested on a warrant following a June 14, 2011, hearing in this case. Although the record is not entirely clear, he apparently was convicted of sexual assault on a minor and sentenced to 3 to 4 years in prison. The victim of Keith's assault was the 14-year-old daughter of his female roommate. Keith served 2 years of his sentence and was released on May 27, 2013, having "jammed out." While he was in prison, Keith did not receive any services from DHHS, despite having been directed to complete requirements in the case plan. He also did not have any visitation or other direct contact with Hayden while serving his sentence.

On October 5, 2012, the State filed a motion to terminate Keith's parental rights. Beverly had previously relinquished her parental rights to Hayden. In its motion, the State noted that Hayden had been in foster care since May 20, 2011, Keith was incarcerated, and reasonable efforts had been made to preserve the family unit. The State alleged that grounds for termination existed under Neb. Rev. Stat. § 43-292(1), (2), and (7) (Cum. Supp. 2012). The court held a hearing on the motion to terminate on June 14, 2013.

At the termination hearing, the State presented evidence of Hayden's condition at the time of his removal. Dutcher testified that when she first received the case, Hayden had few social skills and difficulty communicating. Dutcher noted that Hayden was unable to state his own name or his parents' names, describe the location of his home, or convey what he liked to do. Hayden also had not been potty-trained and would urinate in the corner of his bedroom. Deb Milligan, the therapist who worked with Hayden during this case, testified that she was unable to understand Hayden when she first met him. She also testified that Hayden was very oppositional when he was first placed in Dianna's home and would have severe tantrums that lasted up to an hour at a time.

Hayden's condition has improved throughout this case. The record shows that through therapy, Hayden has become able to converse, improved his attention span, and lessened his displays of aggression. Milligan testified that this was significant improvement, but there was

still "a ways to go" with Hayden's therapy. Hayden has also formed a strong bond to his great-grandmother, Dianna, while living with her. Hayden includes Dianna in his play at therapy, shows love and affection toward her, enjoys talking and sharing personal thoughts with her, and now refers to Dianna's house as "home." Dianna testified that Hayden has developed to the point that she was preparing him for kindergarten.

All parties in the case agreed that Dianna's home was a proper environment for Hayden. Milligan believed that Hayden's contact and bond with Dianna should not be interrupted because it was the only lasting, consistent bond in his life. Dutcher testified that Hayden's best interests required that he be adopted by Dianna. She believed that Keith's circumstances were similar to the time when Hayden was removed and she did not believe there was any indication of how long it would take for Keith to be prepared to assume care of Hayden.

The record shows that Keith had difficulty maintaining a stable life prior to his time in prison. From 2007 until the time of the hearing, Keith had lived in six different places and held six or seven different jobs. His longest period at one job was 1½ years. He also had relationships with a number of women and has fathered two other children, a 2-year-old daughter and a 3-year-old son. Keith's parental rights were terminated to his son, and he has not had much contact with his daughter. Keith is behind on his child support obligations relating to Hayden and has not paid any child support for his daughter.

Keith agreed that Hayden's best interests required his current placement with Dianna, but disagreed that it was in Hayden's best interests that his parental rights be terminated. Keith admitted that he had an unstable life prior to being released from prison. However, he noted that it was Beverly's actions that caused the opening of this case. He also argued that he underwent a change from his time in prison and claimed that he was a better person for Hayden to be around.

While in prison, Keith participated in various programs. He testified that he completed programs relating to violence alternatives and drug use. Keith also testified that he attempted to participate in a parenting program called "Inside Outside Dads" but was unable to participate due to administrative issues. He was also offered and participated in a yearlong program for sex offenders. However, he left the program after 7 months because "it was nonsense." He claimed that his reason for leaving was his disagreement with the program allowing other inmates to tell him what he needed to do with his life.

Upon his release from prison on May 27, 2013, Keith moved into the basement of his parents' home in Dixon, Nebraska. Keith stated that this apartment had sufficient room to house both him and Hayden and had separate bedrooms. On June 10, he obtained and began a full-time job at a local business building trailers. He testified that this job offers overtime and potential bonuses and advancement. Keith believed that this job would allow him to adequately provide for Hayden.

During his testimony, Keith was adamant that he was now prepared to care for Hayden. Although he realized that Hayden had not had contact with him for over 2 years, he believed that small steps could be taken to gradually ease Hayden into the change. Keith testified that he was willing to take whatever steps were required so as to not disrupt Hayden's current routine.

On July 26, 2013, the court entered an order terminating Keith's parental rights. The court found that the State had proved each of its alleged grounds for termination and determined that termination was in Hayden's best interests. The court also found that Keith's testimony was

not credible. The court noted that Keith had lived an unstable life that was due to his own choices and did not believe he was a suitable father for Hayden. The court placed particular emphasis on Keith's sexual assault conviction and his failure to complete the sex offender treatment program while in prison. Hayden had lived the majority of his life without his father, and the court believed there was no reason to prolong Hayden's wait for Keith's maturity.

Keith appeals from this order.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Keith argues that the district court erred in finding that termination of his parental rights was in Hayden's best interests.

## STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013). However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

*Statutory Grounds for Termination.*

In order to terminate an individual's parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the children's best interests. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). In this case, the juvenile court found that the State proved grounds for termination under § 43-292(1), (2), and (7). In his brief, Keith concedes that the statutory grounds for termination exist under § 43-292(7). We further note that the evidence at the termination hearing showed that Hayden has been placed outside the home since his initial removal in May 2011, a period of approximately 18 months at the time the motion for termination was filed and over 24 months at the time of the termination hearing. Therefore, the State proved grounds for terminating under § 43-292(7) by clear and convincing evidence.

Because the State must prove only one ground for termination, we need not address the court's analysis of the other grounds for termination. See *In re Interest of Emerald C. et al.*, 19 Neb. App. 608, 810 N.W.2d 750 (2012). However, when the State seeks termination under subsections of § 43-292 other than subsection (7), the evidence adduced to prove the statutory grounds for termination will also be highly relevant to the best interests of the juvenile. *In re Interest of Emerald C. et al., supra*. We will consider evidence relevant to the other grounds in our analysis of the child's best interests.

*Hayden's Best Interests.*

Keith argues that the State failed to meet its burden to prove that termination of his parental rights was in Hayden's best interests. He admits that his past decisions led to prison and acknowledges that his time in prison weakened his relationship with Hayden. However, he contends that his willingness to do whatever is required to retain his parental rights to Hayden should prevent termination of those rights.

In addition to proving a statutory ground, the State must also show that termination is in the best interests of the child. *In re Interest of Kendra M. et al.*, *supra*. A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *Id*. There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id*. The best interests analysis and the parental fitness analysis are fact-intensive inquiries. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *In re Interest of Hope L. et al.*, 278 Neb. 869, 775 N.W.2d 384 (2009).

The Nebraska Supreme Court has recognized that in termination of parental rights cases, it is proper to consider a parent's inability to perform his or her parental obligations because of imprisonment. *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999). A parent's incarceration may be considered along with other factors in determining whether parental rights can be terminated based on neglect. *Id*. However, a parent's incarceration, standing alone, does not provide grounds for termination of parental rights. *Id*.

During his testimony, Keith highlighted the progress he has made since he was sentenced to prison. Keith testified that he participated in programs while in prison that he believed made him a better parent for Hayden. These programs included a class focused on alternatives to violence and a class on drug use. Keith also stated that he attempted to enroll in a parenting class while in prison, but could not because of administrative issues.

The record also shows that Keith has begun to transition back to society after his release. During the approximately 2 weeks between Keith's release and the termination hearing, he obtained a full-time job and an apartment in his parents' home which had sufficient space to house him and Hayden. Keith believed that his life was moving in a direction where he would be able to provide for Hayden.

Keith also points out that he has made this progress without any support from DHHS. He cites the Nebraska Supreme Court decision in *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004), for the proposition that the State cannot prove termination is in a child's best interests when the parent has not been given the opportunity to comply with the reunification plan. Because he never received any DHHS services while in prison, Keith argues that he has not had an opportunity to comply with the reunification plan.

Although Keith has made positive efforts to quickly obtain employment and housing after his release from prison, even having considered these recent efforts, we conclude that Keith is not in a position to be reunified with Hayden.

As was the juvenile court, we are particularly concerned with Keith's conviction for sexual assault on a minor and his decision to withdraw from the sex offender treatment program. Keith testified that he withdrew from the program because he thought it was "nonsense." Keith's failure to complete this program not only shows that he has not addressed his criminal behavior, but also casts doubt on his ability to comply with any rehabilitation plan to become a suitable parent for his son. In short, Keith's decision not to complete this program negates his testimony that he is willing to do whatever is necessary to preserve his relationship with Hayden.

Moreover, we cannot ignore Keith's situation prior to the filing of this case when considering Hayden's best interests. Before his sexual assault conviction and subsequent prison sentence, Keith lived a life with little regard to Hayden's needs. Keith had a number of relationships with other women, fathering two other children. He could not keep a permanent job or home and was not aware of Hayden's developmental difficulties, despite claiming that he exercised significant visitation. Keith was also behind on his child support for Hayden and had not paid child support for his daughter.

We also note Keith has not lived with Hayden for any extended period of time since shortly after Hayden's birth and could not state when he would be ready to solely parent Hayden in the future. Keith has had no contact with Hayden for over 2 years. Hayden should not be required to wait for Keith's situation to improve to the point where he may be ready to parent in the future. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Angelina G. et al.*, 20 Neb. App. 646, 830 N.W.2d 512 (2013).

Finally, we recognize that the county court, sitting as a juvenile court, was able to observe the testimony in this case. In its order, the county court specifically noted that it did not find Keith's testimony credible. Although we review this case de novo on the record, we are permitted to consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. See *In re Interest of Justine J. et al.*, 286 Neb. 250, 835 N.W.2d 674 (2013). We determine that it is appropriate to give deference to the county court in this case.

Based upon our de novo review of the record, we find clear and convincing evidence that Keith's deficiencies have prevented him from parenting Hayden in the past and would likely prevent him from doing so in the future. Accordingly, the presumption of parental fitness has been rebutted. We also find that termination of Keith's parental rights would be in Hayden's best interests. We affirm the judgment to terminate Keith's parental rights.

CONCLUSION

The court did not err in concluding that Hayden's best interests required terminating Keith's parental rights.

AFFIRMED.