IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF RAVIN L.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF RAVIN L., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

RICHARD L., APPELLANT.

Filed July 12, 2016.    No. A-15-1048.

Appeal from the County Court for Scotts Bluff County: JAMES WORDEN, Judge. Affirmed.

Leonard G. Tabor for appellant.

Kelli L. Ceraolo, Deputy Scotts Bluff County Attorney, for appellee.

MOORE, Chief Judge, and IRWIN and PIRTLE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Richard L. appeals from the decision of the Scotts Bluff County Court, sitting in its capacity as a juvenile court, terminating his parental rights to his son, Ravin L. On appeal, Richard challenges the county court's finding that termination of his parental rights is warranted pursuant to Neb. Rev. Stat. § 43-292(1) and (2) (Cum. Supp. 2014) and that termination is in Ravin's best interests. Upon our de novo review of the record, we find that sufficient evidence was presented to warrant the termination of Richard's parental rights. As such, we affirm the order of the county court terminating Richard's parental rights to Ravin.

- 1 -

## II. BACKGROUND

These juvenile court proceedings involve Ravin, born in May 2007. Richard is Ravin's biological father. Morgan Z. is Ravin's biological mother. Morgan's parental rights to Ravin have previously been terminated. In fact, we affirmed the termination of Morgan's parental rights to Ravin in a memorandum opinion filed on November 20, 2015, in our case No. A-15-391. As such, Morgan is not a party to this appeal, but her involvement in the juvenile court proceedings will be discussed, as she was Ravin's primary caregiver at the time these proceedings were initiated.

The juvenile court proceedings which led to this appeal were initiated during the fall of 2013. However, this is not the first time that Ravin has been involved with the juvenile court system. Due to the actions of his caregivers, and in particular, Morgan, Ravin has been removed from his home and put in an out-of-home placement on eight separate occasions since his birth. The most notable of Ravin's prior interactions with the juvenile court system occurred in April 2011. At that time, Ravin was removed from Morgan's home due to concerns about physical abuse perpetrated on Ravin and his half-brother. Ravin remained in an out-home-placement until February 2012. Richard was only minimally involved in these proceedings, as he was then incarcerated. Richard's incarceration stemmed from his plea to a charge of third degree sexual assault of a child.

After Ravin was returned to Morgan's home in February 2012, Richard was not able to maintain any consistent or substantial involvement in Ravin's life, as he was incarcerated again in May 2012 as a result of a violation of the conditions of his sex offender registration requirement. In fact, it appears that Richard has not had any meaningful contact with Ravin since at least September 2009.

In the fall of 2013, when the current juvenile court proceedings were initiated, the Department of Health and Human Services (the Department) notified Richard about the proceedings. Richard was not permitted to have immediate contact with Ravin due to the length of time since he had "parented" Ravin and due to concerns about Richard's mental health and substance abuse. In November and December 2013, Richard submitted to various psychological evaluations so that the Department could gain insight into whether he should be permitted to have contact with Ravin. The results of Richard's parenting assessment revealed that it would be appropriate for Richard and Ravin to have supervised contact.

Supervised contact between Richard and Ravin does not appear to have occurred, however, because Richard was arrested in April 2014 and charged with attempted distribution of a controlled substance (Methamphetamine). He pled no contest to this charge and was subsequently sentenced to 12 to 36 months' imprisonment. In addition, while Richard was incarcerated, he was charged with the third degree assault of a fellow inmate. He pled no contest to this charge and received an additional six months' imprisonment. Richard remained incarcerated for the duration of the juvenile court proceedings.

On May 6, 2015, the State filed a supplemental petition. In the supplemental petition, the State alleged that Ravin was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2014) due to the faults or habits of Richard. Specifically, the petition alleged that Richard "has failed to provide parental care or support for the juvenile for most of the juvenile's life" due, in part, to his repeated incarcerations.

The supplemental petition also alleged that termination of Richard's parental rights was appropriate pursuant to § 43-292(1) because Richard had abandoned Ravin for six months or more immediately prior to the filing of the petition; § 43-292(2) because Richard had substantially and continuously or repeatedly neglected and refused to give Ravin necessary parental care and protection; § 43-292(6) because following a determination that Ravin is a juvenile within the meaning of § 43-247(3)(a), reasonable efforts to preserve and reunify the family, if required, have failed to correct the conditions leading to the determination; § 43-292(7) because Ravin had been in out-of-home placement for fifteen or more months of the most recent twenty-two months; and § 43-292(9) because Richard had subjected Ravin to aggravated circumstances, including, but not limited to, abandonment. In addition, the petition alleged that termination of Richard's parental rights was in Ravin's best interests.

Although it is not entirely clear from the record, it appears as though Ravin was adjudicated to be a child within the meaning of § 43-247(3)(a) as to Richard. The juvenile court proceedings then focused on that part of the supplemental petition which alleged that termination of Richard's parental rights was warranted. A hearing was held on this issue on August 24, 2015. Because Richard was still incarcerated at the time of this hearing, he did not appear. He was, however, represented by counsel.

At the termination hearing, the State presented evidence regarding Richard's criminal history and the effect this history has had on Richard's ability to be a parent to Ravin. In addition to the four convictions discussed above (third degree sexual assault; violation of sex offender registration; attempted distribution of a controlled substance; and third degree assault), Richard has had at least six additional criminal convictions since Ravin's birth in May 2007. These convictions include false reporting, obstructing a police officer, misdemeanor assault, criminal mischief, driving under the influence, and driving during revocation. As a result of all of these convictions, Richard has been sentenced to a total of four years of probation and approximately five to eight years of imprisonment since Ravin's birth.

The State also offered the testimony of Ravin's mental health counselor, Tina Williams. Williams testified that Ravin suffers from some behavioral problems and that he needs stability and security in his life. Williams indicated that although Ravin knows who his father is, he "very rarely" talks about Richard. She opined that it would not be in Ravin's best interests to pursue reunification with Richard because to introduce Richard into Ravin's life at this point would be "detrimental" to Ravin and the progress he has made since the juvenile court proceedings began.

At the conclusion of the termination hearing, the county court entered an order terminating Richard's parental rights to Ravin. The court found that the State had proven that termination of Richard's parental rights was warranted pursuant to § 43-292(1) and (2) and that termination was in Ravin's best interests.

Richard appeals from the county court's order.

## III. ASSIGNMENTS OF ERROR

On appeal, Richard alleges, restated and consolidated, that the county court erred in finding there was sufficient evidence presented to prove (1) the relevant statutory grounds for termination of his parental rights and (2) that termination of his parental rights is in Ravin's best interests.

## IV. STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## V. ANALYSIS

### 1. STATUTORY GROUNDS FOR TERMINATION

The bases for termination of parental rights in Nebraska are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In its order terminating Richard's parental rights to Ravin, the county court found that the State had presented clear and convincing evidence to satisfy § 43-292(1) and (2), which provides in relevant part:

> The court may terminate all parental rights . . . when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> (1) The parents have abandoned the juvenile for six months or more immediately prior to the filing of the petition; [and]
>
> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection[.]

In his brief on appeal, Richard asserts that the county court erred in finding that termination of his parental rights is warranted pursuant to § 43-292(1) and (2). Contrary to Richard's assertions, upon our de novo review of the record we find that the State presented clear and convincing evidence to prove that termination of Richard's parental rights is warranted pursuant to § 43-292(2). The evidence presented at the termination hearing revealed that Richard has failed to provide Ravin with any parental care or protection for some time.

At the time of the termination hearing, Richard was incarcerated and, as a result, was simply unable to provide Ravin with such basic necessities as housing and food. Due to his incarceration, Richard has also not been able to tend to Ravin's daily needs or provide any emotional support. The Nebraska Supreme Court has recognized that in termination of parental rights cases, it is proper to consider a parent's inability to perform his or her parental obligations because of imprisonment. *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999). A parent's incarceration may be considered along with other factors in determining whether parental rights can be terminated based on neglect. *Id.*

Notably, Richard's current incarceration is due to criminal actions he engaged in after he was notified of the pending juvenile court proceedings involving Ravin. The evidence reveals that the Department informed Richard in October 2013 of the pending juvenile court proceedings. At

that time, Richard began participating in services offered to him by the Department, but, in February 2014, Richard engaged in criminal actions which resulted in him being charged with attempted distribution of a controlled substance. Then, while Richard was in jail awaiting trial on the drug charge and facing a significant jail sentence, he committed another criminal act when he assaulted a fellow inmate. This evidence demonstrates that Richard repeatedly engaged in inappropriate and illegal behavior even after he knew that there was a pending juvenile court case involving Ravin and, thus, after he knew of the growing importance that he be present in Ravin's life.

The evidence presented at the termination hearing did reveal that there was a possibility that Richard would be released from prison in the months following the hearing; however, the evidence also revealed that Richard's current incarceration is not an isolated occurrence, but rather, is part of a history of law violations and resulting periods of incarceration. Richard has been in and out of jail numerous times since Ravin's birth. As a result of Richard's criminal history, he has not been a stable fixture in Ravin's life. There was evidence presented which suggested that Richard had not even seen Ravin in over three years. And, at the very least, Richard has not seen Ravin since the start of these juvenile court proceedings in October 2013. In fact, the evidence presented at the termination hearing revealed that when Ravin was involved in a previous juvenile court proceeding, Richard was unable to participate in that proceeding as a result of another incarceration.

Richard's inability to stay out of trouble has directly affected his ability to be a parent to Ravin. And, based on his history, it appears likely that Richard may not be available to be a parent to Ravin anytime in the near future. One's history as a parent speaks to one's future as a parent. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In its order terminating Richard's parental rights, the county court stated, "[Richard] has not provided any meaningful financial or emotional support to Ravin. [Richard] has spent much of Ravin's life in jail, prison[,] and in court rooms on criminal charges." We agree with the court's summary of the evidence presented at the termination hearing. And, upon our de novo review of the record, we agree with the county court's finding that the State presented sufficient evidence to demonstrate that Richard had substantially and continuously or repeatedly neglected and refused to give Ravin necessary parental care and protection pursuant to § 43-292(2). We find that the county court did not err in finding that termination of Richard's parental rights was warranted pursuant to § 43-292(2).

If an appellate court determines that the lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010). Therefore, this court need not review termination under § 43-292(1).

Once a statutory basis for termination has been proved, the next inquiry is whether termination of parental rights is in the child's best interests.

## 2. RAVIN'S BEST INTERESTS

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re*

*Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Isabel P. et al.*, 293 Neb. 62, 875 N.W.2d 848 (2016). This presumption is overcome only when the State has proved that the parent is unfit. *Id*. In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests analysis and the parental fitness analysis are fact-intensive inquiries. *Id*. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *Id*.

In considering Richard's fitness as a parent and whether termination of his parental rights is in Ravin's best interests, we cannot ignore the evidence of Richard's lengthy criminal history and the resulting periods of incarceration. As we discussed more thoroughly above, Richard has been incarcerated on numerous occasions since Ravin's birth. And, Richard was unable or unwilling to stay out of jail even after he was made aware of the current juvenile court proceedings and after he knew of the importance of being present in Ravin's life. Richard's failure to stay out of trouble during these juvenile court proceedings is strong evidence that he is simply not ready to be a stable and appropriate parent for Ravin.

Richard's current inability to be a stable and appropriate parent for Ravin is especially concerning when we consider Ravin's lengthy history with the juvenile court system and his numerous out-of-home placements. Ravin's counselor testified of the importance of Ravin having stability and security in his life. It is clear from the evidence presented at the termination hearing that Richard has not provided Ravin with any stability or security for some time. It is also clear from the evidence that Richard may not be able to provide Ravin with stability or security any time in the near future.

Ravin does not have a bond with Richard. He has not seen Richard in at least three years and he "rarely" even mentions Richard. Ravin's counselor indicated that it would be "detrimental" to Ravin to pursue any type of reunification with Richard at this point in Ravin's life. We agree with this assessment. Ravin has made progress with his behavioral problems since the beginning of the juvenile court proceedings and reuniting Ravin with Richard would be harmful to this progress.

Given all of the evidence presented at the termination hearing, we conclude that the State clearly and convincingly demonstrated that termination of Richard's parental rights is in Ravin's best interests. Richard is currently not a fit parent. And, based on the evidence presented, it is clear that Richard is not capable of becoming a fit parent for Ravin at any time in the near future. He does not have any relationship with Ravin and Ravin is thriving outside of his care. Ravin needs, and deserves, permanency and Richard is simply not capable of giving such permanency to him.

We affirm the decision of the county court to terminate Richard's parental rights to Ravin.

## VI. CONCLUSION

Upon our de novo review of the record, we find that there was sufficient evidence presented at the termination hearing to warrant the termination of Richard's parental rights to Ravin. As such, we affirm the order of the county court terminating his parental rights.

AFFIRMED.