Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/02/2021 08:08 AM CDT

In re Interest of Joezia P., a child
under 18 years of age.
State of Nebraska, appellee, v.
Jeremy H., appellant.

___ N.W.2d ___

Filed October 19, 2021.    No. A-21-156.

1. **Parental Rights: Due Process: Appeal and Error.** Whether a parent
   who is incarcerated or otherwise confined in custody has been afforded
   procedural due process for a hearing to terminate parental rights is
   within the discretion of the trial court, whose decision on appeal will be
   upheld in the absence of an abuse of discretion.
2. **Juvenile Courts: Appeal and Error.** An appellate court reviews juve-
   nile cases de novo on the record and reaches its conclusions indepen-
   dently of the juvenile court's findings. When the evidence is in con-
   flict, however, an appellate court may give weight to the fact that the
   juvenile court observed the witnesses and accepted one version of facts
   over another.
3. **Appeal and Error.** To be considered by an appellate court, an alleged
   error must be both specifically assigned and specifically argued in the
   brief of the party asserting the error.
4. **Parental Rights: Due Process.** An incarcerated parent does not need to
   be physically present at a hearing to terminate parental rights, so long as
   the parent is afforded procedural due process.
5. **Due Process: Words and Phrases.** The fundamental requirement of
   due process is the opportunity to be heard at a meaningful time and in a
   meaningful manner.
6. **Parental Rights: Due Process.** The juvenile court may consider the
   following factors when determining whether to allow an incarcerated
   parent to be present at a hearing to terminate parental rights: (1) the
   anticipated delay, (2) the need for prompt disposition, (3) the length
   of time during which the case has been pending, (4) the expense of

- 282 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

transportation, (5) the inconvenience or detriment to the parties or witnesses, (6) the potential danger or security risk, (7) the availability of the parent's testimony through means other than physical attendance, and (8) the best interests of the child.

7. **Juvenile Courts: Parental Rights.** Whether an incarcerated parent was afforded a meaningful opportunity to participate in the hearing on the termination of his or her parental rights is a matter left to the discretion of the juvenile court.

8. **Parental Rights: Proof.** To terminate parental rights under Neb. Rev. Stat. § 43-292 (Reissue 2016), the State must prove, by clear and convincing evidence, that one or more of the statutory grounds is satisfied and that termination is in the best interests of the child.

9. **Parental Rights: Abandonment.** While incarceration alone is not a basis for termination of parental rights, a parent's incarceration may be considered along with other factors in determining whether parental rights can be terminated based on neglect.

10. ____: ____. Although incarceration itself may be involuntary, the criminal conduct causing incarceration is voluntary.

11. ____: ____. In termination of parental rights cases, it is proper to consider a parent's inability to perform his or her parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated.

12. **Parental Rights.** When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of parental rights.

13. ____. A child cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity.

14. **Constitutional Law: Parental Rights: Proof.** Because a parent has a constitutionally protected right to raise his or her child, the State must show that a parent is unfit before terminating parental rights.

15. **Parental Rights: Words and Phrases.** Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being.

Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Angelica W. McClure, of Kotik & McClure Law, for appellant.

- 283 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

Patrick F. Condon, Lancaster County Attorney, and Maureen E. Lamski for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Jeremy H. appeals from an order of the separate juvenile court of Lancaster County terminating his parental rights to his minor child, Joezia P. For the reasons that follow, we affirm.

## BACKGROUND

Jeremy is the father of Joezia (born 2017). Jacara P. is the mother of Joezia. However, Jacara is not part of the appeal before us and thus will be discussed only as necessary to address Jeremy's assigned errors.

In April 2017, Jeremy pled no contest to and was convicted of third degree domestic assault in relation to an incident of domestic violence committed against Jacara on or about January 9, while Jacara was pregnant with Joezia. In December, Jeremy pled no contest to and was convicted of third degree domestic assault in relation to an incident of domestic violence committed against Jacara on or about November 10, while Joezia was present in the home.

On March 29, 2019, the State filed a petition alleging that Joezia was a juvenile as defined by Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). Count I of the petition alleged Joezia lacks proper parental care by reason of the faults or habits of his father, Jeremy, or that Joezia is in a situation dangerous to life or limb or injurious to his health or morals. Specifically, the petition alleged the following: (1) on or about November 10, 2017, Jeremy was involved in a domestic confrontation with Joezia's mother, Jacara, while Joezia was present; (2) Jeremy has a history of assaultive behavior, including assaulting Jacara while she was pregnant with Joezia; (3) Jeremy was incarcerated from November 12, 2017, until

- 284 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

September 24, 2018, and Jacara reports that Jeremy continued to engage in assaultive behavior after his release; (4) the actions of Jeremy or said situation places Joezia at risk of harm; and (5) all the events took place in Lancaster County, Nebraska.

Jeremy was personally served with the petition and summons on June 13, 2019, while he was incarcerated at the Lancaster County jail. Jeremy appeared before the juvenile court and denied the allegations in the petition on June 25. On July 24, the State filed an amended petition containing substantially the same allegations as the March 29 petition. After a formal hearing, the court found the allegations in the amended petition true by a preponderance of the evidence. The court adjudicated Joezia as a juvenile under § 43-247(3)(a) on the grounds that he lacks proper parental care by reason of the fault or habits of his father, Jeremy, and he is in a situation dangerous to life or limb or injurious to his health or morals. Thereafter, on July 25, Jeremy pled no contest to two unrelated criminal charges and was sentenced to a total of 42 months of incarceration.

On September 6, 2019, the court placed Joezia in the temporary legal custody of the Nebraska Department of Health and Human Services (DHHS) and initially permitted Joezia to remain physically placed in the home of Jacara. The court ordered Jeremy to participate in supervised visitation with Joezia, to maintain a legal means of support for himself and Joezia, to maintain a safe and stable home free of domestic violence, to participate in random drug testing, and to complete a men's domestic violence class for batterers. The court ordered DHHS to provide any treatment or services recommended by Jeremy's evaluations. Joezia was removed from Jacara's home on September 25, 2019, and has been placed in foster care continuously since.

In December 2019, following a hearing for review of disposition on the amended petition, the court entered an order of review finding that Jeremy had made poor progress toward alleviating the causes of the court's adjudication and Joezia's

- 285 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

out-of-home placement. Accordingly, the court ordered Joezia to remain in the temporary legal custody of DHHS and to remain physically placed in a kinship foster home. The court reiterated its prior orders directed at the parties and also ordered Jeremy to participate in individual counseling to address long-term issues with anger management, violence, and criminal thinking.

In February 2020, the court once again entered an order of review finding that Jeremy had made poor progress toward alleviating the causes of the court's adjudication and Joezia's out-of-home placement. The court ordered Joezia to remain in the temporary legal custody of DHHS and to remain physically placed in a kinship foster home. In addition to reiterating its previous orders, the court ordered Jeremy to participate in child parent psychotherapy (CPP) with Joezia.

In May 2020, the court entered an order of review again finding Jeremy had made poor progress toward alleviating the causes of the court's adjudication and Joezia's out-of-home placement. The court sustained a motion to eliminate the requirement of reasonable efforts to preserve and reunify the family on the grounds that Jeremy previously had his parental rights involuntarily terminated with respect to a sibling of Joezia. See Neb. Rev. Stat. § 43-283.01(4)(c) (Reissue 2016).

On June 23, 2020, the State filed a motion to terminate Jeremy's parental rights to Joezia on the grounds that Jeremy has substantially and continuously or repeatedly neglected and refused to give necessary parental care and protection and that termination of Jeremy's parental rights is in the best interests of Joezia. On June 24, the court entered yet another order of review finding Jeremy had made poor progress toward alleviating the causes of the court's adjudication and Joezia's out-of-home placement. The court also approved a permanency plan of adoption for Joezia.

On July 8, 2020, the State filed an amended motion to terminate Jeremy's parental rights to correct the spelling of Joezia's name in the petition. Jeremy filed a written denial of the

allegations in the amended motion for termination of parental rights on July 14. The court scheduled a formal hearing on the amended motion for November 17.

On October 8, 2020, the State charged Jeremy with one count of escape when under arrest on a felony charge in violation of Neb. Rev. Stat. § 28-912(5)(a) (Reissue 2016). On October 13, the State filed an amended information charging Jeremy with one count of attempted escape. Jeremy pled no contest to the charge in the amended information and was sentenced to an additional 18 months of incarceration, extending his expected release date from March 2021 to December 2021.

On December 9, 2020, the court entered an order of review finding that Jeremy had made "no progress" toward alleviating the causes of the court's adjudication and Joezia's out-of-home placement.

## Hearing on November 17, 2020

Prior to the November 17, 2020, hearing, all the parties stipulated to the hearing's being conducted by videoconference in light of the COVID-19 pandemic. Jeremy was incarcerated at the Tecumseh State Correctional Institution in Tecumseh, Nebraska, and due to limitations at that facility, Jeremy attended the hearing telephonically rather than by videoconference. Jeremy objected to the hearing on the grounds that he could not see the witnesses or communicate with counsel using the private "chat" function. As Jeremy was no longer willing to stipulate to a trial by videoconference, the court continued the matter to the December trial term. In doing so, the court noted the matter had already been pending "for a significant amount of time." The court also referred to case law suggesting the formal hearing could proceed without Jeremy's presence upon proper procedural safeguards.

## Hearing on Jeremy's Motion to Continue

On December 3, 2020, the court entered an order for transport to allow Jeremy to be physically present at the trial scheduled for December 18. However, the court vacated the

- 287 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

order for transport on December 11, because the Tecumseh State Correctional Institution advised the court that Jeremy was under quarantine and could not be transported. On December 14, Jeremy filed a motion to continue the trial on the grounds that his quarantine would prevent him from attending the trial by any means and prevent him from communicating with counsel.

After a hearing on the matter, the court overruled Jeremy's motion to continue, noting that the trial had already been continued once. The court directed the parties to *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992), "which indicates in these motions to terminate parental rights, the presence of the parent is not necessary so long as their procedural due process rights can be afforded." The court explained the State would present its case as scheduled, after which the matter would be continued to provide an opportunity for Jeremy to review the transcript and consult with counsel prior to presenting his case. The court intimated this procedure would adequately protect Jeremy's due process rights and eliminate the need for transportation during the COVID-19 pandemic.

### Formal Hearing Day One: December 18, 2020

The juvenile court convened for a formal hearing on the amended motion for termination of parental rights on December 18, 2020. Jeremy was represented by counsel, but he was not present at the hearing. The State called four witnesses, including the owner of Associates in Counseling and Treatment (ACT), Jeremy's case manager from the period of time when he was incarcerated at the Community Corrections Center-Lincoln (CCCL), the DHHS case manager assigned to the case during the period of time after March 16, and the therapist who provided CPP services to Joezia from October 2019 to October 2020.

Joezia's therapist testified that Joezia first attended CPP in October 2019 with his foster parent at that time. Joezia cried during the entire session and refused to play with the

- 288 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

toys made available to him. Joezia attended a second session in November with the same foster parent. At the second session, Joezia played independently with some toys, but he remained nonverbal and once again cried a lot. The foster parent also reported to the therapist that Joezia "just cried all the time" and was physically aggressive with the foster parent's biological child. The therapist testified that young children who experience domestic violence often struggle to "regulate" their emotional responses. She also testified to the importance of stability and permanency for a child of Joezia's age.

Joezia attended a third CPP session in January 2020, after being placed in a new foster home. The therapist testified that Joezia "was absolutely a different kid" at the January session. Joezia played with toys and appeared happy and joyful. He was more interactive and able to "self-regulate" better than during the previous sessions. The therapist testified that Joezia and the new foster parent successfully completed the full course of CPP in October 2020. At that point, Joezia was "very bonded and attached" to the foster parent, and he was able to self-regulate.

The therapist testified that she attempted to schedule a CPP parent assessment with Jeremy; however, he failed to attend the session due to a "transportation glitch." The record reflects that a CPP appointment was made for March 18, 2020, but Jeremy was not made aware of the appointment and thus failed to attend. While the therapist was not able to observe Jeremy with Joezia, she testified that based on Joezia's age and the length of time since Jeremy's last contact with him, Joezia "probably does not have any memory" of Jeremy.

The evidence adduced at the hearing revealed that Jeremy enrolled in a 30-week batterer's intervention class at ACT on July 20, 2020. Jeremy completed one intake session and two weekly classes prior to being terminated from the class for leaving the property without permission and verbally abusing his case manager at CCCL. Jeremy's case manager at CCCL testified that Jeremy's electronic monitor showed him

- 289 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

leaving ACT when he was supposed to be in the class. The owner of ACT testified that Jeremy would not be allowed to re-enroll in the ACT batterer's intervention class and would instead need to complete a 36-week program through a different facility to comply with the court's order.

Jeremy's case manager at CCCL also testified that Jeremy attempted to obtain free mental health services at a facility called CenterPointe. The case manager explained that CenterPointe offers free mental health counseling on a first-come-first-serve basis. Jeremy was allowed to seek services at CenterPointe on three or four occasions, but the case manager testified that he never actually obtained services due to lack of availability. On one occasion, after being transported to CenterPointe, Jeremy cut his electronic monitor and fled from custody. Jeremy was eventually found, convicted of attempted escape, and sentenced to an additional 18 months of incarceration.

The DHHS case manager testified that Jeremy sent Joezia a "doll-type toy" in August 2020. Aside from that gift, Jeremy had not had any contact with Joezia since May or June 2019 due to Jeremy's incarceration. The case manager ultimately expressed the opinion of DHHS that termination of Jeremy's parental rights is in Joezia's best interests. In expressing this position, the case manager noted Joezia's behavioral challenges since being placed in foster care, Jeremy's lengthy criminal history, and Jeremy's continued incarceration.

When the State rested its case, the court reiterated the intended procedure to recess until Jeremy had an opportunity to review a transcript of the State's evidence and consult with counsel before proceeding. The court indicated it would also provide Jeremy's counsel with a digital media file of the evidence "in the event" that Jeremy had a computer available to him. Counsel noted that she had a conversation with Jeremy prior to the hearing in which he advised that he did not have access to a computer. Accordingly, counsel stated that "we will just wait for the transcript."

- 290 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

Formal Hearing Day Two:
January 27, 2021

The juvenile court convened for a second hearing on the amended motion for termination of parental rights on January 27, 2021. Jeremy was once again represented by counsel, but he was not initially present at the hearing. Jeremy later appeared via videoconference for approximately 30 minutes of the hearing. Counsel for Jeremy called three witnesses, including the DHHS case manager assigned to the case during the period of time before March 16, 2020; the Licensed Independent Mental Health Practitioner (LIMHP), who conducted a co-occurring evaluation on Jeremy and provided individual therapy services to Jeremy from December 2019 to March 2020; and Joezia's foster parent from September 25 to December 2, 2019.

The DHHS case manager testified that she arranged for a co-occurring evaluation of Jeremy to be completed by a LIMHP. The LIMHP testified that she completed the co-occurring evaluation in August 2019. She diagnosed Jeremy with "early remission . . . prior amphetamine dependence" and "antisocial personality disorder." Based on the evaluation, the LIMHP recommended that Jeremy participate in intensive individual therapy, complete "domestic violence classes," and receive a psychiatric medication assessment.

The LIMHP testified that she provided twice-weekly individual therapy services to Jeremy beginning in December 2019. She described Jeremy as being "participative and willing" to cooperate with individual therapy. In March 2020, the LIMHP ceased providing in-person therapy services for personal health reasons related to the COVID-19 pandemic. At that time, Jeremy was incarcerated at CCCL, and Jeremy's case manager at CCCL testified that CCCL was unable to facilitate virtual services when Jeremy was at the facility.

After all other witnesses had testified, the court asked counsel for Jeremy whether Jeremy intended to testify. Counsel stated, "No, Your honor. It's my understanding that [Jeremy] did not want to testify today . . . unless he had changed

- 291 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

his mind from when I had spoken with him before." Counsel added, "I have not had an opportunity to discuss any of the testimony that happened today or whether there was any follow-up that [Jeremy] wanted from today's testimony." The court then stated the following:

> In fairness to [Jeremy], given these are allegations as to him, I think we had also set additional time on Friday, had we not, for conclusion of the matter? If we resume the matter at that point in time, that will afford [counsel] the opportunity to at least contact [Jeremy], determine if he wishes to testify. My understanding is the video ability is limited but he may have more of an extended ability to appear by telephone, so I think we could accommodate that.

### Formal Hearing Day Three: January 29, 2021

The court reconvened on January 29, 2021. Jeremy was represented by counsel but was not present. The court asked counsel for Jeremy whether she had any additional evidence, to which question she responded as follows: "No, Your Honor. I would state that I did have an opportunity to discuss the matter with [Jeremy] and he has elected not to testify in regards to this case. So with that information, we would rest."

The court heard closing arguments and took the matter under advisement. On January 29, 2021, the court entered an order terminating Jeremy's parental rights to Joezia. The court found that Jeremy

> has failed to put himself in a position to parent his child throughout the entirety of the case, and with knowledge of his child being in foster care and a pending motion to terminate his parental rights, chose to engage in further criminal activity thereby making himself unavailable to parent his child for an extended period of incarceration.

The court noted Jeremy was afforded an opportunity to work in the community and engage in court-ordered services, but

- 292 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

"he failed to refrain from criminal acts resulting in his incarceration and continued removal from his child." On these grounds, the court found that Jeremy had engaged in neglect under Neb. Rev. Stat. § 43-292(2) (Reissue 2016).

The court went on to find that termination of Jeremy's parental rights was in Joezia's best interests in light of Joezia's need for permanency and Jeremy's relative inability to provide a stable and secure environment. Based on his history of incarceration and inability to provide a basic means of support for Joezia, the court found that the State had rebutted the presumption that Jeremy is a fit parent.

## ASSIGNMENTS OF ERROR

Jeremy assigns that the juvenile court erred in (1) overruling Jeremy's motion to transport, (2) finding that the State proved by clear and convincing evidence that Jeremy substantially and continuously or repeatedly neglected and refused to give Joezia necessary parental care and protection, and (3) finding that the State proved by clear and convincing evidence that termination of Jeremy's parental rights was in Joezia's best interests.

## STANDARD OF REVIEW

[1] Whether a parent who is incarcerated or otherwise confined in custody has been afforded procedural due process for a hearing to terminate parental rights is within the discretion of the trial court, whose decision on appeal will be upheld in the absence of an abuse of discretion. *In re Interest of Taeson D.*, 305 Neb. 279, 939 N.W.2d 832 (2020).

[2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *In re Interest of Becka P. et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019).

- 293 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

## ANALYSIS

### MOTION TO TRANSPORT

[3] In his first assignment of error, Jeremy asserts "[t]he juvenile court erred in overruling [his] motion to transport Jeremy to the trial in this matter thus not allowing him to meaningfully participate in his defense." However, in the body of his argument on appeal, Jeremy asserts multiple due process violations, including the following: (1) the decision to overrule Jeremy's motion to continue filed on December 14, 2020; (2) the decision to overrule the motion to transport filed on January 21, 2021; (3) the inability of counsel to communicate with Jeremy "in real time during the trial"; (4) the failure to provide Jeremy with a transcript of the evidence presented on his behalf at the second hearing on January 27; and (5) the failure to provide "an unlimited amount of time" for Jeremy to decide whether to testify in his own defense. Brief for appellant at 15. The only alleged error which was both specifically assigned and specifically argued was with regard to the juvenile court's overruling Jeremy's motion to transport filed on January 21. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). Accordingly, we do not address the alleged errors that were argued but not assigned.

[4,5] It is well settled in Nebraska that an incarcerated parent does not need to be physically present at a hearing to terminate parental rights, so long as the parent is afforded procedural due process. See, *In re Interest of Taeson D., supra*; *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.*

[6] The juvenile court may consider the following factors when determining whether to allow an incarcerated parent to be present at a hearing to terminate parental rights: (1) the anticipated delay, (2) the need for prompt disposition, (3) the

- 294 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

length of time during which the case has been pending, (4) the expense of transportation, (5) the inconvenience or detriment to the parties or witnesses, (6) the potential danger or security risk, (7) the availability of the parent's testimony through means other than physical attendance, and (8) the best interests of the child. See *In re Interest of L.V., supra*. Whether a parent who is incarcerated or otherwise confined in custody has been afforded procedural due process is a matter within the discretion of the juvenile court whose decision will be upheld on appeal in the absence of an abuse of discretion. *In re Interest of Taeson D.*, 305 Neb. 279, 939 N.W.2d 832 (2020).

In *In re Interest of Taeson D.*, a parent was incarcerated out-of-state and did not appear in any manner for a hearing on a motion to terminate his parental rights. The parent was represented by counsel throughout the proceedings and had an opportunity to consult with counsel prior to the hearing. On appeal, the parent argued he was entitled to a telephonic or video hearing and the failure to provide such a hearing violated due process.

The court observed that some jurisdictions

> require juvenile courts to *either* give incarcerated parents the opportunity to participate by telephone in the entire hearing . . . *or* offer an alternative procedure by which the incarcerated parent may review a transcript of the record of the evidence presented against him or her and testify later at a bifurcated hearing.

*Id.* at 286, 939 N.W.2d at 837-38 (emphasis supplied). However, the court also noted the juvenile court's "relative inability to compel an out-of-state correctional facility to allow an incarcerated parent to participate in an entire hearing." *Id.* at 286, 939 N.W.2d at 838. Thus, the court declined to adopt a rigid requirement of telephonic participation and decided instead to "leave it to the juvenile courts' discretion to determine how an incarcerated parent may meaningfully participate in the hearing on the termination of his or her parental rights consistent with due process." *Id.*

- 295 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

In this case, Jeremy was aware that Joezia was adjudicated as a juvenile under § 43-247(3)(a). Jeremy was aware of the pending motion to terminate his parental rights and filed a written denial to the allegations therein. Jeremy was represented by counsel throughout the proceedings, and the juvenile court held a bifurcated hearing, allowing Jeremy to review a transcript of the evidence against him and consult with counsel before presenting his case. After the close of all the evidence, the court continued the matter for a third hearing to afford Jeremy additional time to consult with counsel prior to resting his case.

[7] Jeremy argues the juvenile court's decision to overrule his motion to transport violated due process because there was no hearing on the matter, and "[t]here is no evidence in the record as to why the Motion to transport by counsel for Jeremy was overruled." Brief for appellant at 24. However, the court clearly explained its plan to hold a bifurcated hearing to permit Jeremy an opportunity to review the evidence against him and consult with counsel before presenting his case. The court stated this procedure was designed to protect Jeremy's due process rights and "eliminate the issue of transportation during the COVID-19 pandemic." Whether Jeremy was afforded a meaningful opportunity to participate in the hearing is a matter left to the discretion of the juvenile court. See *In re Interest of Taeson D., supra.* In light of the significant amount of time during which the case had been pending, the potential inconvenience to the parties and witnesses of requiring transport, and the heightened security risk related to the COVID-19 pandemic, it was not an abuse of discretion for the court to overrule Jeremy's motion to transport.

## TERMINATION OF PARENTAL RIGHTS

[8] To terminate parental rights under § 43-292, the State must prove, by clear and convincing evidence, that one or more of the statutory grounds is satisfied and that termination is in the best interests of the child. See *In re Interest of Becka P.*

- 296 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

*et al.*, 27 Neb. App. 489, 933 N.W.2d 873 (2019). An appellate court reviews juvenile cases de novo on the record; however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. See *id.*

Jeremy assigns that the juvenile court erred in finding clear and convincing evidence of statutory grounds to terminate his parental rights under § 43-292(2). This section permits termination of parental rights when the parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection.

[9-11] While incarceration alone is not a basis for termination of parental rights, a parent's incarceration may be considered along with other factors in determining whether parental rights can be terminated based on neglect. *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999); *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). "We have often noted that although incarceration itself may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary." *In re Interest of Kalie W.*, 258 Neb. at 50, 601 N.W.2d at 756. In *In re Interest of Kalie W.*, the court declared "it is proper to consider a parent's inability to perform his parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated." 258 Neb. at 51, 601 N.W.2d at 757 (internal quotation marks omitted).

The record reflects that Jeremy was continuously incarcerated from November 2017 to September 2018 in relation to an incident of domestic violence between Jeremy and Jacara while Joezia was present in the home. Jacara reported that Jeremy continued to engage in assaultive behavior after his release, which behavior eventually led to Joezia's being adjudicated under § 43-247(3)(a) as a juvenile who lacks proper parental care through the fault or habits of Jeremy.

- 297 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

Jeremy was subsequently incarcerated from June 2019 to August 2020. In August 2020, Jeremy escaped from custody while on pass to obtain court-ordered mental health services. Jeremy was eventually found and convicted of additional criminal charges related to his escape, resulting in an additional 18 months of incarceration. Jeremy was aware that Joezia was adjudicated under § 43-247(3)(a) and placed in foster care. Jeremy was also aware of the pending petition to terminate his parental rights. Nevertheless, Jeremy voluntarily engaged in further criminal conduct that resulted in an additional term of incarceration, thereby extending the period of time during which Jeremy would be unable to perform parental obligations.

Jeremy points out that he actively pursued court-ordered services but was prevented from completing them through no fault of his own. It is true that precautions related to the COVID-19 pandemic and limitations at CCCL prevented Jeremy from obtaining a number of court-ordered services that were only offered online at the time. However, when Jeremy was allowed to seek in-person services in the community, he cut his electronic monitor and escaped from custody. Jeremy also argues he was terminated from the ACT batterer's intervention class due to "a misunderstanding." Brief for appellant at 26. However, the evidence adduced at the hearings indicates that Jeremy was terminated from the class for leaving the building without permission and verbally abusing his case manager at CCCL. Having been terminated from the 30-week class, Jeremy would have needed to complete the longer 36-week class to comply with the court's order.

Based on our de novo review, we find clear and convincing evidence that Jeremy has substantially and continuously or repeatedly neglected Joezia and has refused to provide necessary parental care and protection. Accordingly, we conclude that the juvenile court did not err in finding that the State proved by clear and convincing evidence that Jeremy's parental rights may be terminated under § 43-292(2).

- 298 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

Jeremy next assigns that the juvenile court erred in finding clear and convincing evidence that termination of Jeremy's parental rights was in Joezia's best interest. The court also found the State met its burden to rebut the presumption that Jeremy is a fit parent.

[12-15] When a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of parental rights. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). Moreover, a child cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). Because a parent has a constitutionally protected right to raise his or her child, the State must show that a parent is unfit before terminating parental rights. See *id.* Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which caused, or probably will result in, detriment to a child's well-being. *Id.*

In this case, Joezia was placed into foster care in September 2019. Joezia's therapist testified that Joezia was nonverbal and struggled to regulate his emotions at CPP sessions that took place in October and November 2019. The therapist testified that this behavior was consistent with children who have experienced domestic violence. Joezia was placed with a new foster family in December 2019, and by January 2020, Joezia had made substantial improvement. The therapist testified to the importance of permanency and stability in Joezia's life, which was demonstrated by Joezia's improvement once placed in a stable environment.

Jeremy failed to provide a basic means of support and stable housing. The therapist indicated that Joezia likely would have no memory of Jeremy due to Joezia's age and the length of time since Jeremy had contact with Joezia. Throughout the proceedings, Jeremy failed to rehabilitate himself and engaged

- 299 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF JOEZIA P.
Cite as 30 Neb. App. 281

in further criminal conduct that resulted in his continued removal from Joezia.

Based on our de novo review, we find clear and convincing evidence that termination of Jeremy's parental rights is in Joezia's best interests. Accordingly, we conclude that the juvenile court did not err in finding that the State proved by clear and convincing evidence that termination of Jeremy's parental rights was in Joezia's best interests.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the juvenile court terminating Jeremy's parental rights to Joezia.

Affirmed.