Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/08/2022 09:06 AM CST

- 602 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

In re Interest of Serenity A. and Canjerrica D.,
children under 18 years of age.
State of Nebraska, appellee,
v. Candice D., appellant.

___ N.W.2d ___

Filed February 8, 2022.    No. A-21-340.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other.

2. **Parental Rights: Due Process: Appeal and Error.** Whether a parent who is incarcerated or otherwise confined in custody has been afforded procedural due process for a hearing to terminate parental rights is within the discretion of the trial court, whose decision on appeal will be upheld in the absence of an abuse of discretion.

3. **Motions for Continuance: Appeal and Error.** A court's grant or denial of a continuance is within the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion.

4. **Parental Rights: Due Process.** An incarcerated parent's physical presence is not necessary at a hearing to terminate parental rights, provided that the parent has been afforded procedural due process.

5. **Due Process.** The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.

6. **Juvenile Courts: Parental Rights: Due Process.** Generally, it is within the juvenile court's discretion to determine how an incarcerated parent may meaningfully participate in the hearing on the termination of his or her parental rights consistent with due process.

- 603 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

7. **Constitutional Law: Due Process.** Procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker.

8. **Parental Rights: Due Process.** In determining whether to allow a parent's attendance at a hearing to terminate parental rights, notwithstanding the parent's incarceration or other confinement, a juvenile court must consider several factors: the delay resulting from prospective parental attendance, the need for disposition of the proceeding within the immediate future, the elapsed time during which the proceeding has been pending before the juvenile court, the expense to the State if the State will be required to provide transportation for the parent, the inconvenience or detriment to parties or witnesses, the potential danger or security risk which may occur as a result of the parent's release from custody or confinement to attend the hearing, the reasonable availability of the parent's testimony through a means other than parental attendance at the hearing, and the best interests of the parent's child or children in reference to the parent's prospective physical attendance at the termination hearing.

9. **Juvenile Courts: Parental Rights: Due Process.** When a juvenile court knows that a parent is incarcerated or confined nearby, it should take steps, without request, to afford the parent due process before adjudicating a child or terminating the parent's parental rights.

10. ____: ____: ____. The factors that a court considers in connection with allowing a parent's attendance at a hearing to terminate parental rights, notwithstanding the parent's incarceration or other confinement, relate to the overarching and fundamental due process right of the parent to be heard at a meaningful time and in a meaningful manner.

Appeal from the Separate Juvenile Court of Lancaster County: Elise M.W. White, Judge. Reversed and remanded for further proceedings.

Dalton W. Tietjen, of Tietjen, Simon & Boyle, for appellant.

Patrick F. Condon, Lancaster County Attorney, and Maureen E. Lamski for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

- 604 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

Welch, Judge.

## INTRODUCTION

Candice D. appeals the order of the Lancaster County Separate Juvenile Court terminating her parental rights as to her two minor children, Serenity A. and Canjerrica D. Candice argues that the juvenile court erred in refusing to continue the termination hearing, in violation of her due process rights; in terminating her parental rights pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 2016); and in finding that termination was in the minor children's best interests. For the reasons stated herein, we reverse the order and remand the cause for further proceedings.

## STATEMENT OF FACTS

### Background

Candice is the biological mother of Serenity, born in 2008, and Canjerrica, born in 2010. The children's father is not part of this appeal and will only be referenced as necessary to provide factual context.

On September 20, 2019, Candice attempted to pick up the minor children from school but was too intoxicated to care for them. Candice admitted to drinking and was transported to a detoxification center. The minor children were removed from Candice's care on September 21 and have remained in out-of-home care since that time.

As a result of these events, Candice was ticketed for child abuse, and at the end of October 2019, the juvenile court adjudicated Serenity and Canjerrica as children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) based upon Candice's admission to allegations that the children lacked proper parental care by reason of Candice's fault or habits relating to the September 20 incident. The initial dispositional order was entered in January 2020, and review hearings were held in June, October, and December. During the pendency of this case, the court ordered Candice to, among other things, participate in and successfully complete a residential

- 605 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

substance abuse program and follow any recommendations for stepdown care or treatment and relapse prevention; abstain from the possession or consumption of alcohol, controlled substances, or any mind- or mood-altering substances unless prescribed by a physician; attend Narcotics Anonymous or Alcoholics Anonymous meetings; participate in an initial diagnostic assessment or mental health evaluation; cooperate with family support services; participate in family counseling; and participate in supervised or monitored parenting time.

On December 21, 2020, the State filed a motion to terminate Candice's parental rights pursuant to § 43-292(2), (6), and (7). After difficulty serving Candice with a copy of the motion to terminate her parental rights, the court allowed Candice to be served by publication. The termination hearing, which was originally scheduled for January 22, 2021, was continued to March 10, then continued again to April.

### Motion to Continue Termination Hearing

At the start of the April 2021 termination hearing, the court granted a recess requested by Candice's counsel because Candice had not yet arrived. Following the recess, a deputy informed the court that Candice had been taken into custody on an outstanding warrant upon entering the courthouse for the hearing and would not be available for the hearing. After receiving this information, Candice's counsel requested a continuance which was denied by the court on the bases that the termination hearing had been continued at least once previously and that the court did not believe Candice "[had] appeared at any of the prior hearings [or] multiple docket calls."

### Termination Hearing

At the termination hearing, the court received two exhibits into evidence: the September 25, 2020, case plan and court report and a collection of certified copies of the court records in this case. The State's sole witness was Jordan Housh, who served as a child and family services specialist for the Department of Health and Human Services (DHHS) in this

- 606 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

case from September 2019 to the time of the termination hearing, except during her maternity leave, which lasted from November 2020 until March 1, 2021. Housh testified that the family had two prior court-involved cases which Candice was able to resolve. She provided that when the current case began in September 2019, DHHS offered family support services, visitation services, referrals to treatment facilities, structured decisionmaking assessments (which are a tool that DHHS uses to determine children's safety), and a substance abuse evaluation. Housh testified that Candice posed a safety risk to the children because, when Candice was intoxicated, she was unable to provide them with adequate supervision, parenting, and care.

The month after the January 2020 dispositional hearing, Candice was arrested for child neglect after she, while visibly intoxicated, attempted to contact Serenity at a recreation center. Candice's visitations were temporarily suspended with the provision that visitations could take place in a therapeutic setting while Candice was sober. Following a hearing in early March, the court ordered that Candice "shall have a minimum of once weekly supervised parenting time with the minor children [and that Candice] shall not use or be under the influence of alcohol or controlled substances during her parenting time and may be required to undergo testing prior to any visit taking place."

After Candice's February 2020 arrest for child abuse, she entered a short-term residential treatment program. While in short-term residential treatment, Candice suffered a relapse, but she was able to successfully complete the program. She then transitioned to the residential "Project Mother Child" program. In June, the court permitted Candice to move from supervised visitation to monitored visitation, which allowed Candice and the children to walk from Candice's inpatient residential facility to nearby stores. While in the residential program, Candice relapsed and was intoxicated during at least two of her monitored visitations with her children. One of

- 607 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

Candice's visits with her children ended early because Candice was intoxicated and fell asleep during the session. Candice failed to attend another visitation and could not be reached by the visitation worker. In July, Candice was discharged from the residential program because she had relapsed, refused to submit to a breath alcohol test, and was taken to a detoxification center by law enforcement but left there before she was sober. After Candice's relapse and discharge from the residential program, her visitation was changed from monitored visitation to supervised visitation, which status continued for the remainder of the case.

In August 2020, Candice reentered a short-term residential treatment program. Due to the COVID-19 pandemic, the facility enacted restrictions which complicated in-person visitation between Candice and the children. Candice successfully graduated from the program in September and was presented with certificates of completion from a wellness and recovery group, a parenting class, and a "Circle of Security" class and received four letters of support from therapists and support staff at the facility. At the completion of her treatment, she had obtained housing and had a plan for therapy, continued drug treatment, medication management, Narcotics Anonymous or Alcoholics Anonymous attendance, and drug testing.

Despite Candice's progress, Housh generally testified that in November 2020, Candice did not engage in drug testing, substance abuse services, or family support. Candice's last visit with her children occurred on December 24, and from December 2020 to March 2021, Candice's whereabouts were unknown. During that time, Housh alleged Candice was not involved in substance abuse treatment and family support. Housh testified that Candice did not have any contact with DHHS from December 2020 until March 29, 2021, when she contacted Housh. During that contact, Candice stated that she had been assaulted multiple times and asked to meet Housh in person. The meeting took place several days later at Candice's apartment. Housh noted that the front door of the apartment

- 608 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

complex was unlocked and cracked open and that Candice's apartment door was open. Housh stated that during previous visits, she was unable to enter the apartment complex because the front door was always locked. Candice informed Housh that she had been assaulted four times, and Housh observed that Candice had stitches on her left eyebrow and bruising on her eyes and face. During the meeting, Candice stated that she feared disclosing the assaults to Housh because she had been previously told that she needed to make real changes and participate in all services. Candice denied using any alcohol. After further discussion, Candice reported to Housh that she had been at a domestic violence support center which offered her crisis services, emergency shelter, and transitional housing. Housh testified that during her meeting with Candice, Candice received a call from the center asking when Candice would be returning to the center.

During the meeting, Housh informed Candice of the pending motion to terminate Candice's parental rights and the scheduled hearing thereon. Housh testified that this information caused Candice to become visibly upset, raise her voice, use profanity, and present with "aggressive" body language. Housh indicated Candice was eventually able to calm down and continue the discussion, telling Housh that she had called her children "a few times" from the center, she provided Christmas gifts for her children, and stated several times that she was "the best mom and that she ha[d] always been there for her children."

Housh admitted that Candice and the children share a strong bond and love each other and that when Candice was sober, the visits went well. However, when Candice was not sober during visits,

> [t]he children did not want to continue the visits and would usually ask the visitation worker if they could leave the visit. During the visit, what would upset the girls . . . would be [Candice's] falling asleep on the couch, her questioning the girls about different things that either didn't make sense or that the girls didn't know

- 609 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

the answer to. . . . [S]ometimes Candice would be in the bathroom for periods of time. Ultimately, the children would mostly ask the visit to be ended due to [Candice's] intoxication.

The children have also stated that they do not want to be around Candice if she continued to use substances. Further, although Housh acknowledged that COVID-19 had negatively impacted the progress of the case, there was no denial of treatment due to COVID-19 and it was ultimately Candice's relapse that affected the progress of the case. Additionally, Housh testified that Candice has not had stable employment throughout this case due to attending treatment and that although family counseling was set up, it was stopped after Candice was unsuccessfully discharged from short-term treatment. Housh testified that Candice has not engaged in drug or alcohol testing since April 1, 2021.

Housh testified that it was DHHS' position that terminating Candice's parental rights was in the children's best interests because

[Candice] has been uninvolved in the case for the past three months and . . . even prior to December of 2020 and November of 2020, she could not gain stability of her life. She could not remain sober. And even prior to this case being open, there were also previous cases where there [were] similar issues. Yes, in the previous cases she was able to fix those issues and have the children returned back to her home, but this time she has been unable to do that, and I believe that it puts the children at risk of future harm if they were to be reunited with her.

### JUVENILE COURT'S ORDER

The juvenile court terminated Candice's parental rights pursuant to § 43-292(2), (6), and (7) and found that termination was in the minor children's best interests. The court specifically found that Candice had substantially and continuously or repeatedly neglected and refused to give the children

- 610 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

necessary parental care and protection, that reasonable efforts to preserve and reunify the family had failed to correct the conditions which led to adjudication, and that the children had been in out-of-home placement for more than 15 of the past 22 months. The court further found that the termination was in the minor children's best interests in order for them to obtain permanency, specifically finding that Candice was unfit due to her failure to gain stability or maintain sobriety, placing her children at risk; the children went 3 months without any contact from Candice; the children needed a permanent, stable, and loving caregiver; and the court had not been presented with any evidence that Candice had made continued improvement in her parenting skills or maintained a beneficial relationship with her children. Candice has timely appealed to this court.

## ASSIGNMENTS OF ERROR

Candice's assignments of error, renumbered and restated, are that the juvenile court erred in (1) overruling her motion to continue the termination hearing; (2) terminating her parental rights pursuant to § 43-292(2), (6), and (7); and (3) finding that the termination was in the children's best interests.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016). When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other. *Id*.

[2] Whether a parent who is incarcerated or otherwise confined in custody has been afforded procedural due process for a hearing to terminate parental rights is within the discretion of the trial court, whose decision on appeal will be upheld in the absence of an abuse of discretion. *In re Interest of Joezia P., ante* p. 281, 968 N.W.2d 101 (2021).

- 611 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

[3] A court's grant or denial of a continuance is within the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *In re Interest of Noah C.*, 306 Neb. 359, 945 N.W.2d 143 (2020).

## ANALYSIS

### Motion to Continue

Candice first argues that the juvenile court's refusal to continue the termination hearing following her arrest at the courthouse violated her due process rights and was an abuse of the court's discretion.

[4,5] It is well-settled law in Nebraska, and Candice acknowledges, that an incarcerated parent's physical presence is not necessary at a hearing to terminate parental rights, provided that the parent has been afforded procedural due process. *In re Interest of Taeson D.*, 305 Neb. 279, 939 N.W.2d 832 (2020). The fundamental requirement of due process is the opportunity to be heard "'"at a meaningful time and in a meaningful manner."'" *Id*. at 285, 939 N.W.2d at 837, quoting *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

[6-9] Generally, it is within the juvenile court's discretion to determine how an incarcerated parent may meaningfully participate in the hearing on the termination of his or her parental rights consistent with due process. See *In re Interest of Taeson D., supra*.

> "'[P]rocedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker.'"

*In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 247-48, 674 N.W.2d 442, 457 (2004). In determining whether to allow a parent's attendance, notwithstanding the parent's incarceration or other confinement, a juvenile court must consider

- 612 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

several factors identified by the Nebraska Supreme Court
as follows:

> "the delay resulting from prospective parental attendance,
> the need for disposition of the proceeding within the
> immediate future, the elapsed time during which the
> proceeding has been pending before the juvenile court,
> the expense to the State if the State will be required to
> provide transportation for the parent, the inconvenience
> or detriment to parties or witnesses, the potential danger
> or security risk which may occur as a result of the par-
> ent's release from custody or confinement to attend the
> hearing, the reasonable availability of the parent's testi-
> mony through a means other than parental attendance at
> the hearing, and the best interests of the parent's child or
> children in reference to the parent's prospective physical
> attendance at the termination hearing."

*In re Interest of Taeson D.*, 305 Neb. at 285-86, 939 N.W.2d
at 837, quoting *In re Interest of L.V.*, 240 Neb. 404, 482
N.W.2d 250 (1992). However, when a juvenile court knows
that a parent is incarcerated or confined nearby, it should
take steps, without request, to afford the parent due process
before adjudicating a child or terminating the parent's parental
rights. *In re Interest of Landon H.*, 287 Neb. 105, 841 N.W.2d
369 (2013).

Here, Candice was not personally served with summons
in connection with the termination proceedings due to her
unknown location at that time. Instead, notice of the proceed-
ing was provided through publication and, after Candice even-
tually reached out to Housh, Housh provided her with actual
notice of the termination hearing 4 days before its scheduled
date. Candice attempted to attend the termination hearing;
however, she was arrested on an outstanding warrant when she
arrived at the courthouse. The court's awareness of Candice's
situation was captured on the record. Following Candice's
counsel's disclosure that he was waiting for Candice to arrive,
the court granted a recess and stated:

- 613 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

> [I]t was my understanding from our courthouse security
> that [Candice] does have a warrant outstanding and so if
> she does appear in the courthouse, I'm not overly confi-
> dent that she will make it up to the 4th floor before being
> taken in for that warrant. But, nonetheless, we will —
> let's recess.

Following a short recess, the parties returned and counsel
indicated that Candice had been taken into custody on the war-
rant. Counsel requested a continuance without objection, but
the court denied the oral motion, indicating:

> The Court would note, I think this matter has been set for
> trial and continued at least once that the Court's recalling
> for further efforts at service. Court would also note that I
> do not believe [Candice] has appeared at any of the prior
> hearings that the Court has had and there's been multiple
> docket calls on this matter. So, at this time, the Court will
> deny the Motion to Continue.

The question becomes whether the juvenile court abused its
discretion in overruling Candice's counsel's motion to continue
the trial under these circumstances. We hold that it did.

The timing of counsel's motion to continue the termina-
tion hearing here presents unusual circumstances. In deciding
whether to allow a parent's attendance at a hearing to terminate
parental rights notwithstanding the parent's incarceration or
confinement, the court is normally examining a case of con-
finement which predated the date of the hearing. For instance,
in *In re Interest of Joezia P., ante* p. 28, 968 N.W.2d 101
(2021), we held the juvenile court did not abuse its discretion
in overruling a motion to transport the father to appear at trial
when the court had continued the trial on a previous occasion
so the father could attend and made arrangements for the father
to meaningfully participate in the trial despite his physical
absence. More specifically, we stated:

> In this case, [the father] was aware that [the child]
> was adjudicated as a juvenile under § 43-247(3)(a). [The
> father] was aware of the pending motion to terminate

- 614 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

> his parental rights and filed a written denial to the alle-
> gations therein. [The father] was represented by counsel
> throughout the proceedings, and the juvenile court held
> a bifurcated hearing, allowing [the father] to review a
> transcript of the evidence against him and consult with
> counsel before presenting his case. After the close of all
> the evidence, the court continued the matter for a third
> hearing to afford [the father] additional time to consult
> with counsel prior to resting his case.

*In re Interest of Joezia P., ante* at 295, 968 N.W.2d at 112
(2021).

But the instant case presents a markedly different set of cir-
cumstances and procedural posture. First, despite the juvenile
court's statement, in support of denial of the motion to con-
tinue, which indicated that Candice "[had not] appeared at any
of the prior hearings [or] multiple docket calls," this statement
was not an accurate account of the record. The record demon-
strates that Candice was present at the October 2019 adjudica-
tion hearing, the January 2020 dispositional hearing, the June
2020 review hearing, and the October 2020 review hearing. It
appears that Candice was not present at the December 2019
review hearing which was continued until January 2020, the
March 2020 motion to suspend visitation, and the March
2021 docket call for termination. This error may likely relate
to the change in juvenile court judges during the pendency
of the case. More importantly, Candice attempted to attend
the termination hearing and was arrested upon entering the
courthouse.

Second, a significant component of our ruling in *In re
Interest of Joezia P., supra*, was premised upon our finding
that the juvenile court took steps to ensure the incarcerated
individual could meaningfully participate in the trial despite his
physical absence from the proceedings. Here, no such accom-
modation was made, in large measure because Candice's con-
finement took place only minutes before the termination hearing
began. Instead of focusing on the impact of that confinement

- 615 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

as it related to Candice's ability to participate in the termination hearing, the court appeared more concerned with prior delays and the need to move forward with the proceeding. And although prior delays are relevant considerations in balancing due process rights associated with attendance at a termination hearing, it must be considered in connection with the children's best interests in reference to a parent's actual attendance at trial and the parents' due process rights to meaningfully participate at a termination hearing, including the reasonable opportunity to refute or defend against the allegations.

[10] The factors that a court considers in connection with allowing a parent's attendance at a hearing to terminate parental rights, notwithstanding the parent's incarceration or other confinement, relate to the overarching and fundamental due process right of the parent to be heard at a meaningful time and in a meaningful manner. See *In re Interest of Joezia P., ante* p. 281, 968 N.W.2d 101 (2021) (fundamental requirement of due process is opportunity to be heard at meaningful time and in meaningful manner). In reviewing the facts of this case, we are mindful of the Nebraska Supreme Court's statement in *In re Interest of Landon H.*, 287 Neb. 105, 112, 841 N.W.2d 369, 374-75 (2013), wherein the court held:

> We clarified that juvenile courts are not required to conduct inquiries into the whereabouts of every parent who fails to appear for a scheduled hearing. In most cases, a parent who has notice of the hearing should request to personally participate. But when a court knows that a parent is incarcerated or confined nearby, it should take steps, without request, to afford the parent due process before adjudicating a child or terminating the parent's parental rights.

In balancing those rights here, it is clear from this record that Candice's October 2020 report showed significant improvement in her alcohol dependence which led to the original adjudication and eventual motion to terminate. It is equally clear the State moved forward with termination when Candice

- 616 -

Nebraska Court of Appeals Advance Sheets
30 Nebraska Appellate Reports
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

could not be located for several months following the previous hearing, in which she demonstrated significant progress. As such, the one person in a position to explain what happened to her was Candice, who attempted to attend her trial but was arrested when she reached the courthouse.

Although Candice had missed some, but not all, of the court's prior hearings, she attempted to attend the termination hearing. This was not a case of a parent's unknown whereabouts or failure to appear. The court was aware Candice was detained upon arrival while attempting to appear. Under these circumstances, the juvenile court should have afforded Candice an opportunity to participate in the termination hearing. Although Candice's counsel was present and able to participate in some ways, that participation did not include a meaningful opportunity to arrange for Candice to testify if she chose to. Further, because the court granted the State's request to continue the father's termination hearing until June 2021, there was not a need to dispose of Candice's termination hearing in the immediate future, in that granting a continuance to allow Candice an opportunity to participate in her termination hearing would not detrimentally impact the children's immediate permanency or stability. Conversely, there was significant detriment to Candice by not continuing the termination hearing to allow her to participate in some form. Based upon the facts present in this case, we find the juvenile court abused its discretion in not granting Candice's counsel's motion for a continuance to allow Candice an opportunity to meaningfully participate in the proceedings.

## Remaining Assignments of Error

Having determined that the order of the juvenile court must be reversed and that the cause must be remanded for further proceedings, we need not address Candice's remaining assignments of error. See *In re Adoption of Yasmin S.*, 308 Neb. 771, 956 N.W.2d 704 (2021) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

- 617 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
30 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF SERENITY A. & CANJERRICA D.
Cite as 30 Neb. App. 602

## CONCLUSION

Having found that the court abused its discretion in failing to continue the hearing for termination of Candice's parental rights or take steps to ensure her meaningful participation, we reverse the juvenile court's order of termination and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.