IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF ALEXA B. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ALEXA B. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

BRYON B., APPELLANT, AND ERICA B., APPELLEE, AND RICK S. AND LAURA S.,
INTERVENORS/APPELLEES.

Filed February 21, 2023.    No. A-22-536.

Appeal from the Separate Juvenile Court of Sarpy County: JONATHON D. CROSBY, Judge. Affirmed.

Colleen M. Dostal, Deputy Sarpy County Public Defender, for appellant.

Gary E. Brollier, Deputy Sarpy County Attorney, and Lauren S. Evans, Senior Certified Law Student, for appellee State of Nebraska.

PIRTLE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Bryon B. appeals from an order of the separate juvenile court of Sarpy County which terminated his parental rights to his five minor children. Bryon challenges the sufficiency of the evidence in support of the juvenile court's finding that termination of his parental rights was in the best interests of the children. Bryon further challenges the juvenile court's finding that the Nebraska Department of Health and Human Services (DHHS) has made reasonable efforts to achieve permanency for the children. For the reasons that follow, we affirm.

- 1 -

BACKGROUND

Bryon and his former wife, Erica B., had five children together: Lilly B., born in 2008, James B., born in 2013, Ayden B. born in 2014, Nikolai B., born in 2016, and Alexa B., born in 2019. Bryon and Erica were married in June 2010 and divorced in November 2020. While Erica's parental rights were also terminated in the juvenile court proceedings below, her parental rights are not at issue in this appeal. Accordingly, Erica will be discussed only to the extent necessary to resolve Bryon's claims on appeal.

DHHS first made contact with this family in September 2019, in response to reports that the family home was "exceptionally dirty" with guns and insulin pens left out within the children's reach. There were further concerns that the children were being left at times in the care of Bryon's elderly father who was then confined to a chair and "could barely move to go to the bathroom." DHHS completed a safety plan with Bryon and Erica and established services to help improve the living conditions of the home. Under the safety plan, the children were to be kept out of the family home until it was cleaned. The children were not formally removed from Bryon and Erica's care at that time and DHHS concluded its involvement after completion of the safety plan.

DHHS came into contact with this family a second time in December 2019, in response to reports that Bryon had sexually assaulted Erica's younger sister, who was then a juvenile. On or about December 30, 2019, Bryon was arrested and charged with first degree sexual assault of a child. With the exception of a roughly 3 month period from January to April 2022, Bryon was continuously incarcerated throughout the remainder of the juvenile court proceedings.

In addition to the sexual assault allegations against Bryon, DHHS identified additional safety concerns including the living conditions of the home and Erica's mental capacity. There were further concerns about Erica allowing her parents to have contact with the children. These concerns revolved around reports that Erica's parents knew Bryon had sexually assaulted their minor daughter, but they failed to report it because Bryon was the children's primary caregiver and they did not want him to go to prison. Despite these concerns, the children remained in Erica's care and custody subject to a safety plan.

At some point after December 2019, DHHS learned that the safety plan was being violated, and the children were removed. The children were returned briefly to Erica's care in March 2020. However, the children were removed once again in July 2020, and they remained in an out-of-home placement for the remainder of the juvenile court proceedings.

The July 2020 removal was prompted by reports that the oldest child, Lilly, was engaged in an inappropriate relationship with a 40-year-old male individual. In that regard, a law enforcement officer testified that he was dispatched to the family home on July 21, 2020, upon a report of possible child enticement. The ensuing investigation revealed sexually explicit communications and at least some degree of physical contact between Lilly and the suspect.

On July 23, 2020, the State filed a juvenile petition alleging that the children came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) in that they are in a situation dangerous to life or limb or injurious to their health or morals. With respect to Bryon, the petition alleged that he was arrested and charged with sexual assault of a child in December 2019, and had remained incarcerated ever since. At that point, it does not appear that Bryon had either sought or obtained any contact with his children since his arrest in December 2019.

In a December 1, 2020, pretrial order, the juvenile court noted that Bryon remained incarcerated and "has no contact" with the children. The court further noted a stipulation to obtain an opinion regarding contact with Bryon from the children's therapist. In the next pretrial order, entered on January 13, 2021, the juvenile court noted that "the therapist recommends no contact between the children and their father at this time." Shortly thereafter, on January 27, Bryon filed a motion to allow contact with the children, which was set for hearing on February 11. At that hearing, the court announced that the parties had come to an agreement to allow Bryon to write letters to the children which were to be screened by the children's therapist and provided to the children in a therapeutic environment.

On August 3, 2021, the State filed an amended information in Bryon's pending criminal case, alleging one count of attempted first degree sexual assault. On the same day, Bryon pled guilty and was convicted on that charge by the district court for Sarpy County. The district court deferred sentencing until after a presentence investigation and psychosexual evaluation. The sentencing hearing was originally scheduled for October 2021, however, various delays resulted in multiple continuances, and Bryon was not sentenced until April 2022.

While awaiting sentencing in his criminal case, on October 27, 2021, Bryon filed a motion for telephone contact with the children, alleging delays and practical difficulties associated with the court ordered written contact. On January 21, 2022, Bryon filed a motion for visitation alleging that he had posted bond and was released on January 14. Those motions remained pending when, on January 27, the State filed an amended juvenile petition with respect to Erica and a supplemental juvenile petition with respect to Bryon. In addition to allegations under § 43-247, the supplemental petition also alleged grounds to terminate Bryon's parental rights under Neb. Rev. Stat. § 43-292(4) and (7) (Reissue 2016) and alleged that termination of Bryon's parental rights was in the children's best interests.

A hearing scheduled for January 28, 2022, was continued upon a stipulated motion of the parties, so Bryon's requests for contact and visitation were not taken up until March 8. On March 7, Nicole Riggins, who was the therapist for Lilly, James, and Ayden, wrote a letter to the court recommending that telephone contact with Bryon be allowed if requested by the children. Riggins further opined that physical contact between Bryon and the children "could be detrimental to the children's mental health." In a March 8 pretrial order, the juvenile court reiterated the same procedure for Bryon to engage in written contact with the children and ordered that he be allowed supervised telephone contact at the children's request. Bryon apparently participated in one telephone call initiated by Lilly, James, and Ayden sometime after the March 8 pretrial order and before Bryon's sentencing in mid-April.

On April 19, 2022, Bryon was sentenced in his criminal case to 12 to 14 years of incarceration with credit for 797 days' served. Trial on the amended juvenile petition and supplemental juvenile petition was held over the course of three days on May 2, May 3, and June 6, 2022. DHHS case manager, Kyley Dobey, testified that she took over the case in July 2021. Dobey testified that she met with Bryon in jail to discuss services available to him, such as facilitating written contact with the children, a nurturing fathers program, and family team meetings. Dobey recalled that Bryon would attend family team meetings virtually when the jail would allow, and he attended at least one family team meeting in person during the roughly 3 months that he was out of jail from January to April 2022. However, Dobey also recalled that

- 3 -

Bryon ceased writing letters to the children and made at least two attempts to have unauthorized contact with Lilly during that time frame.

With regard to the children, Dobey noted an ongoing concern regarding "sexualized behaviors" exhibited by the children. Riggins testified that both James and Ayden exhibited sexualized behaviors at school that were not age appropriate such as "asking peers at recess to show their privates" and "showing other children their penis [sic]." In her March 7, 2022, letter, Riggins wrote that James and Ayden had started to "hump blankets and their beds, which is also very unusual for children their age to know how to do." Riggins further testified that James and Ayden's behaviors seemed to regress following the telephone contact with Bryon. In that regard, Riggins opined that it would have been difficult for the children to have that contact with Bryon after several months of no contact. Additionally, Riggins testified that she had to explain to the children that they may not be able continue having telephone contact after Bryon was sentenced to prison, which caused further distress.

Lilly, James, and Ayden attended individual therapy sessions with Riggins on a weekly basis. Riggins testified that she diagnosed each of them with post-traumatic stress disorder. Riggins also recalled at least one incident in 2021 in which James was hospitalized because he wanted to harm himself. Jennifer T., who was the foster placement for Lilly, James, and Ayden, testified that all of the children, "especially Lilly," had poor hygiene when they came into her care. Jennifer recalled that Lilly was "afraid to take a shower" and had not been taught proper menstrual care. During the time that the children were in Jennifer's care, Ayden was diagnosed with autism and ADHD, and he was prescribed medication for those conditions. According to Jennifer, James had also been diagnosed with ADHD and was prescribed medication for bipolar depression. Jennifer and Riggins both testified that Bryon had never reached out for information regarding the children or their progress addressing these behavioral and mental health concerns.

After trial, on June 7, 2022, the juvenile court entered an order terminating Bryon's parental rights. The court specifically found the State's witnesses to be "probative, credible, reliable, and entitled to weight." The court further noted as follows with regard to Bryon's parental fitness:

> [Bryon] is in no position to parent his children . . . has had little or no contact with the minor children for almost two years . . . is currently incarcerated for attempted first degree sexual assault of a minor and won't be released in the foreseeable future. . . . The Court specifically finds that no beneficial relationship currently exists between [Bryon] and the minor children herein. The Court further finds that continued contact with [Bryon] is contrary to the minor children's best interests at this time.

The court ultimately found that the State had established, by clear and convincing evidence, statutory grounds for termination under § 43-292(4) and (7) and that termination was in the best interests of the children. Having so found, the court ordered that Bryon's parental rights be terminated. Bryon appealed.

ASSIGNMENTS OF ERROR

Bryon assigns that the juvenile court erred in (1) finding clear and convincing evidence that termination of Bryon's parental rights was in the best interests of the children, and (2) finding

that DHHS made reasonable efforts to achieve permanency and improperly considering that finding in deciding to terminate Bryon's parental rights.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id.*

## ANALYSIS

It is the State's burden to show by clear and convincing evidence both that one of the statutory bases enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Mateo L. et al., supra.* In the present case, Bryon concedes on appeal that the State met its burden to prove statutory grounds under § 43-292(7), and our review of the record supports that the children were out of the home for the requisite amount of time and, thus we need not address the statutory grounds prong of the termination analysis any further. See *In re Interest of Mateo L. et al., supra* (any one of statutory bases from § 43-292 can serve as basis for termination).

*Best Interests*.

Whereas statutory grounds are based on a parent's past conduct, the best interests inquiry focuses on the future well-being of the child. *In re Interest of Mateo L. et al., supra.* The Nebraska Supreme Court has stated that the Due Process Clause of the U.S. Constitution would be offended if a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness. *Id.* As such, we apply a rebuttable presumption that it is in the child's best interests to maintain a relationship with his or her parent. *Id.* That presumption can only be overcome by a showing that the parent is either unfit to perform the duties imposed by the relationship or has forfeited that right. *Id.* In this context, parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and that has caused, or probably will result in, detriment to a child's well-being. *Id.*

Bryon's central argument on appeal is that the State relied too heavily on his incarceration and failed to present evidence of a personal deficiency that prevented him from parenting his children. Bryon emphasizes that his incarceration is temporary and that he will be eligible for parole sometime in 2026. Bryon further argues that at the time of the termination hearing, DHHS had not yet identified a permanent placement that could accommodate all five children together. Bryon acknowledges that he will be unavailable to parent his children until after he completes his lengthy prison sentence. However, he suggests there is little difference between the children awaiting a suitable adoptive home and awaiting completion of his sentence, arguing that "two opportunities for permanency" are better than one. Brief for appellant at 19.

First, under Neb. Rev. Stat. § 43-292.02(2) (Reissue 2016), the fact that a qualified family for an adoption of the juvenile has been identified, recruited, processed, and approved shall have no bearing on whether parental rights shall be terminated. In *In re Interest of Destiny A. et al.*, 274

Neb. 713, 742 N.W.2d 758 (2007), the Supreme Court clarified that that language applies to all termination of parental rights cases. The court further held that it was error for a juvenile court to admit evidence that an adoptive placement had been identified and, once admitted by the juvenile court, it was error for an appellate court to consider that evidence. Accordingly, to the extent the record indicates whether or not a suitable adoptive placement had been identified in the present case, we decline to consider that evidence.

We also reject Bryon's argument that the State relied too heavily on Bryon's incarceration and failed to otherwise show parental unfitness. Although parental rights may not be terminated solely for a parent's incarceration, parental incarceration is a factor which may be considered in determining whether parental rights should be terminated. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). It is proper to consider a parent's inability to perform parental obligations because of imprisonment, the nature of the crime committed, as well as the person against whom the criminal act was perpetrated. *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999). See, also, *In re Interest of Joezia P.*, 30 Neb. App. 281, 968 N.W.2d 101 (2021).

With the exception of a roughly 3 month period of time in early 2022, Bryon was continuously incarcerated from December 2019 to the termination hearing in May and June 2022. With respect to the nature of the crime committed, Bryon was arrested and charged with first degree sexual assault of a child after Erica's minor sister disclosed allegations that Bryon sexually assaulted her. Bryon ultimately pled guilty to attempted first degree sexual assault and was sentenced to 12 to 14 years of incarceration. According to Bryon's own calculation, he will not be eligible for any form of release until sometime in 2026.

It is clear that Bryon's incarceration rendered him unable to parent his children throughout the juvenile court proceedings and for a significant period of time into the future. In light of the nature of the crime Bryon was convicted of, there were understandable concerns about Bryon having contact with the children. These concerns were especially apparent with respect to Lilly, who was 13 years old at the time of the termination hearing, just a few years younger than Erica's sister was when she disclosed the sexual assault. As a result, Bryon had very little contact with his children throughout the juvenile court proceedings, and it was anticipated that he would not have meaningful contact with the children while he served his 12 to 14 year prison sentence.

Admittedly, the record indicates that, prior to his incarceration, Bryon was the primary caregiver to the children. Moreover, the older children expressed that they missed Bryon and requested contact with him, and Bryon attended family team meetings when he was able to do so. However, the safety concerns for this family predated Bryon's incarceration, and the children were forced to endure increasingly tumultuous circumstances following Bryon's subsequent criminal conduct and incarceration. After being removed multiple times from Erica's care, the children ultimately landed in foster care, where the older three children in particular required substantial intervention to address the various behavioral and mental health concerns that had developed.

Based upon our de novo review of the record, we agree with the juvenile court that Bryon was in no position to parent his children and there was no beneficial relationship between Bryon and the children at the time of the termination hearing. The conduct that led to Bryon's arrest and incarceration, in addition to his conduct since that time, clearly and convincingly establishes that Bryon was unfit to parent and that termination of his parental rights was in the best interests of the children. Bryon encourages this court to reverse his termination so that the children may be left to

await his eventual release from prison at an unknown time in the distant future. We decline to do so, as we will not gamble with a child's future, and a child cannot be made to await uncertain parental maturity. See *In re Adoption of Micah H.*, 301 Neb. 437, 918 N.W.2d 834 (2018).

*Reasonable Efforts*.

Bryon next assigns that the juvenile court erred in finding that DHHS made reasonable efforts to achieve permanency for the children and improperly considered that finding in terminating Bryon's parental rights. Bryon acknowledges the settled rule that reasonable efforts to reunify a family are required under the juvenile code only when termination is sought under § 43-292(6). Bryon further acknowledges that the termination in his case was not sought under that subsection. Thus, there is no dispute that it was not necessary for the State to make reasonable efforts to reunify Bryon with his children. See *In re Interest of Hope L. et al.*, 278 Neb. 869, 775 N.W.2d 384 (2009) (reaffirming reasonable efforts only required when termination sought under § 43-292(6)).

Nevertheless, in the order terminating Bryon's parental rights, the juvenile court further ordered that DHHS "has made reasonable efforts to achieve permanency." Bryon argues this finding was erroneous insofar as it "contributed to the juvenile court's conclusion that termination of Bryon's parental rights was in his children's best interest." Brief for appellant at 20. In this way, Bryon seems to suggest that the court's consideration of the reasonable efforts finding was only erroneous to the extent that it contributed to an erroneous conclusion on best interests. Having already concluded that the juvenile court's best interests conclusion was not erroneous, there is no need to address that argument any further.

CONCLUSION

For the foregoing reasons, we affirm the order of the juvenile court terminating Bryon's parental rights with respect to his five minor children.

AFFIRMED.